## A01A1810. RILEY v. THE STATE.
(556 SE2d 917)

BLACKBURN, Chief Judge.

Following a jury trial, Kinte Riley appeals his conviction for burglary, contending that: (1) the trial court erred by conducting the trial in his absence; (2) the evidence was insufficient to support the verdict; and (3) the trial court erred by refusing his request to instruct the jury on the lesser included offense of criminal trespass. For the reasons set forth below, we reverse.

1. Riley contends, and the State concedes, that the trial court violated his Sixth Amendment right to confrontation of witnesses by conducting the trial in his absence. We agree.

The record shows that, on the morning of November 4, 1999, Riley's case was called for trial, and the attorneys argued certain motions before the trial court. Riley was present in the courtroom at this time. Following the motions, the trial court recessed for lunch, and, after this break, Riley did not return to the courtroom. Then, the attorneys for the defendant and the State announced that they were ready for trial. Voir dire was conducted, and a jury was chosen and seated. At that point, the trial court noted:

Very well. A couple of matters I wanted to put on the record before we proceed further. It is now 2:35. When the court recessed for lunch at 5 minutes after 12:00, I recessed until 1:15. . . . The defendant, Kinte Riley, also known as Kinte

Mayes, has not returned. It is now an hour and 20 minutes beyond the time that he was ordered to return.

After indicating that he could not locate the defendant, Riley's trial counsel stated: "I'd just like to note also, your honor, in my brief research, I cannot waive his presence because he has a constitutional right and, therefore, he has to waive his constitutional rights." The trial court then revoked Riley's bond, issued a bench warrant for his arrest, found that Riley had waived his Sixth Amendment rights, and decided to proceed in his absence. Subsequently, the jury was sworn, and the trial was conducted.

Contrary to the trial court's finding, however, a defendant does not waive his Sixth Amendment rights by voluntarily absenting himself prior to the attachment of jeopardy during his trial.

> [F]or Sixth Amendment waiver purposes, trial begins when jeopardy attaches, and thereafter a defendant can waive his constitutional right of confrontation by voluntarily absenting himself from the proceedings. The record in the present case clearly shows that the jury had not been impaneled and sworn before defendant's disappearance, so jeopardy had not attached and the trial had not begun. In the absence of jeopardy attaching, the waiver principles are inapplicable, and we must conclude that appellant is entitled to a new trial since his Sixth Amendment right to confrontation was violated by trial proceeding in his absence.

*Pollard v. State*.[1] See also *Loper v. State*;[2] *Deal v. State*.[3]

Here, as in *Pollard*, supra, the defendant voluntarily absented himself from the proceedings before jeopardy attached. As such, we find that Riley's conviction must be reversed and he is entitled to a new trial. Id.

2. Riley contends that the evidence was insufficient to support the verdict against him.

> "On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Riley] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The . . . verdict must

---

[1] *Pollard v. State*, 175 Ga. App. 269, 270 (333 SE2d 152) (1985).

[2] *Loper v. State*, 191 Ga. App. 515 (382 SE2d 212) (1989).

[3] *Deal v. State*, 213 Ga. App. 131 (443 SE2d 713) (1994).

be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Kovacs v. State.*[4] See *Jackson v. Virginia.*[5]

Viewing the evidence in this light, the record shows that, on November 3, 1998, Artie Miller observed Riley and Raymond Logan knock on the door of the home of his neighbor, Chauman Edwards. When no one answered the door, Riley and Logan left, walked past Miller's house, and entered Logan's house which was located just up the street from Miller. A few minutes later, Miller saw Riley and Logan walk out of his view around the side of Edwards' house, and when they emerged from the same side of the house and returned to the street, they were carrying a pair of hedge clippers and a VCR. Miller testified that he did not see Riley and Logan actually entering Edwards' home. Miller then witnessed Riley and Logan go back to Logan's house.

Shortly after witnessing the incident, Miller called the police. Officer Sonya Hill responded to the call and discovered that the side door of Edwards' house had been kicked in and portions of the interior had been ransacked. Hill, with the assistance of other officers, then apprehended Riley and Logan at Logan's house, and Miller positively identified the suspects at the scene.

Edwards testified that, during the break-in, a pair of hedge clippers was taken from his den and a VCR was taken from his bedroom. Although the house was dusted for fingerprints, none were discovered. And, because the arresting officers did not have a search warrant at the time that Riley and Logan were apprehended, the house in which they were arrested was not searched and the items stolen from Edwards' home were never recovered.

This evidence was sufficient to support Riley's conviction. Although based partially on circumstantial evidence that Riley actually entered the burglarized home, the direct evidence that Riley was seen approaching the house and then leaving with the same type of property that was stolen renders such circumstantial evidence inconsistent with Riley's innocence. *In the Interest of G. P.*[6]

3. Riley contends that the trial court erred by refusing his written request to charge the jury on the lesser included offense of criminal trespass. However,

where the defendant has denied entering the burglarized premises, we have held that trespass instructions are not

---

[4] *Kovacs v. State*, 227 Ga. App. 870-871 (1) (490 SE2d 539) (1997).
[5] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[6] *In the Interest of G. P.*, 242 Ga. App. 745, 746 (531 SE2d 162) (2000).

appropriate. . . . [T]he jury [has] the choice either to convict the defendant of burglary if it believed the State's evidence or to acquit the defendant if the State did not meet its burden; however, the jury [will] not be permitted the compromise choice of disbelieving the defendant and returning a verdict of guilty on the lesser offense of criminal trespass, differing from burglary only in criminal intent.

(Punctuation omitted.) *Underwood v. State.*[7]

*Judgment reversed. Pope, P. J., and Mikell, J., concur.*

DECIDED DECEMBER 5, 2001.

*Demetria N. Williams,* for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney,* for appellee.

---

[7] *Underwood v. State,* 221 Ga. App. 93, 95-96 (3) (470 SE2d 699) (1996).
[1] *Peek v. State,* 247 Ga. App. 364, 365 (1) (542 SE2d 517) (2000).