A02A1202. EMILIO v. THE STATE.
(570 SE2d 372)

PHIPPS, Judge.

Ricardo C. Emilio appeals his conviction for trafficking in amphetamine. He alleges that there was insufficient evidence of the quantity of amphetamine, that the trial court's jury charge on trafficking was erroneous, that the State improperly placed his character

in evidence, and that he received ineffective assistance of counsel. We reject Emilio's first three arguments and affirm his conviction, but we remand for a hearing on the ineffective assistance claim.

Taken in the light most favorable to the verdict, the record shows that Lieutenant Robbie Johnston and Detective Jason Bolton of the Henry County Police Department were on patrol when they saw a car speeding and veering into the oncoming lane. Johnston initiated a traffic stop. While Bolton spoke with the female driver, Johnston questioned the male passenger, who identified himself as Emilio and said he was the driver's boyfriend.

Johnston then talked to the driver, Kimberly Mayo, who said that she owned the car. Mayo consented to a search of her purse and car. Johnston found $12,315 in cash in Mayo's purse. At first, Mayo said the money belonged to Emilio; later, she claimed it was hers. Inside the center console of the car, Johnston found a purple cloth bag which held a small set of electronic scales and two "plastic ziploc [sic] type" bags containing a substance he believed was methamphetamine. (The substance in one of the bags later tested positive for amphetamine.) Mayo and Emilio were arrested and charged with trafficking in amphetamine.

At trial, Mayo — who had pled guilty to the lesser offense of possession of amphetamine — testified that the purple bag and its contents belonged to Emilio, as did most of the money found in her purse. She also testified that she "partially" participated in drug trafficking with Emilio. Emilio, on the other hand, testified that the bag and the money in Mayo's purse were hers. He claimed that he did not know she was distributing drugs.

1. Emilio argues that the State failed to prove beyond a reasonable doubt that he committed the offense of trafficking in amphetamine because the evidence did not show that the purple bag contained 200 or more grams of amphetamine.

Under OCGA § 16-13-31 (e), a person who knowingly possesses 28 or more grams of amphetamine is guilty of the offense of trafficking. The applicable punishment depends on the quantity of drugs involved. Under OCGA § 16-13-31 (e) (2), if the quantity is at least 200 grams but less than 400 grams, then the person shall be sentenced to a mandatory minimum of 15 years in prison and fined $300,000. Emilio was sentenced according to that provision.[1]

A chemist with the State Crime Laboratory testified that the

---

[1] The indictment charged Emilio simply with "trafficking in amphetamine," without indicating a specific quantity. Likewise, the verdict form indicated that the jury found him guilty of "trafficking in amphetamine," but not in any particular amount. However, discussion on the record between the trial court and the attorneys shows that the court imposed sentence pursuant to OCGA § 16-13-31 (e) (2).

substance in one of the two plastic bags found in Mayo's car tested positive for amphetamine. She testified that "[t]he weight of that bag was 251.1 grams" and that the "weight of the total contents" was 323.6 grams. She did not test the other bag.

Based on this testimony, Emilio claims that the evidence showed that the weight of the bag plus its contents was 323.6 grams, but the weight of the bag itself was 251.1 grams. Thus, he argues, the weight of the drugs inside the bag was 323.6 grams minus 251.1 grams — far less than the minimum of 200 grams required by OCGA § 16-13-31 (e) (2).

Although it is true that the chemist testified that "the bag" weighed 251.1 grams, it strains credulity to assume that she meant that the "plastic ziploc type" bag, alone, weighed 251.1 grams — an amount equal to approximately one-half pound.[2] The only reasonable interpretation of her testimony is that the substance inside the bag weighed 251.1 grams, which is within the limits specified in the statute under which Emilio was sentenced. Thus, the evidence was sufficient under the standard of *Jackson v. Virginia*[3] for the jury to find Emilio guilty of trafficking in 200 or more grams of amphetamine.

2. Emilio argues that the trial court erroneously instructed the jury that anyone who knowingly possesses 200 grams or more of "amphetamine or any mixture of amphetamine" commits the offense of trafficking. This language tracks OCGA § 16-13-31 (e) (2), which criminalizes the knowing possession of 200 or more grams of "methamphetamine, amphetamine, or a mixture containing either substance." According to Emilio, the court's charge allowed the jury to find him guilty either of trafficking in pure amphetamine or of trafficking in a mixture of amphetamine, yet the indictment charged him only with the first method of trafficking. Thus, Emilio contends that the charge ran afoul of the following principle: "[W]hen the indictment specifies the commission of a crime by only one of several methods possible under the statute, if a reasonable [probability] exists that the jury may convict the defendant of committing the crime in a way not alleged in the indictment, it is reversible error to charge the entire Code section."[4]

Emilio's argument turns on the assumption that OCGA § 16-13-31 (e) (2) specifies two different methods of committing the crime of trafficking in amphetamine — knowingly possessing 100 percent pure amphetamine or knowingly possessing a substance containing some per-

---

[2] We take judicial notice of the fact that one gram is equivalent to 0.0353 ounce. See OCGA § 24-1-4.

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] (Citations omitted.) *Perguson v. State*, 221 Ga. App. 212, 213 (1) (470 SE2d 909) (1996).

centage of amphetamine that is less than 100 percent. But as we pointed out in *Bellamy v. State*,[5] the statute treats pure amphetamine[6] and a mixture containing amphetamine equally; it does not establish two different methods of trafficking based on the purity of the drug.

Here, the State charged Emilio with "trafficking in amphetamine." The evidence at trial showed that, as a result of forensic testing, the substance in question "was positive for amphetamine." The court's instruction to the jury that trafficking in amphetamine may be accomplished by possessing "amphetamine or any mixture of amphetamine" did not create the possibility that Emilio was convicted of an offense not charged.

3. Emilio asserts that the State unfairly placed his character into issue through Lieutenant Johnston's testimony that Emilio told him that he had entered the country illegally from Mexico approximately two months before and was carrying false identification. But Emilio did not object to the admission of this testimony at trial, so he has waived the right to challenge it on appeal.[7]

Emilio concedes that he has not preserved the issue for review, but contends that the error was so plain that no contemporaneous objection was necessary. Plain error is "that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding."[8] Our Supreme Court has limited consideration of plain error to death penalty cases and cases in which a judge allegedly has opined on the guilt of the accused.[9] Although this court's application of the plain error doctrine has been less restrictive, we have generally reserved its use for cases presenting "exceptional circumstances."[10]

No exceptional circumstances are present here. The alleged error is simply the improper admission of testimony implicating Emilio's character. Emilio's failure to make a contemporaneous objection precludes our review, and plain error analysis does not apply.[11]

4. Finally, Emilio argues that his trial counsel was ineffective in a number of respects. The State contends that Emilio waived his ineffectiveness claim by not raising it in the trial court, but we disagree.

---

[5] 243 Ga. App. 575, 579 (2) (530 SE2d 243) (2000).

[6] *Bellamy* involved methamphetamine, but the statute also applies to amphetamine.

[7] See *Boone v. State*, 250 Ga. App. 133, 136 (3) (549 SE2d 713) (2001).

[8] (Citation and punctuation omitted.) *Sanchez v. State*, 234 Ga. App. 809, 811 (3) (508 SE2d 185) (1998).

[9] *Pittman v. State*, 273 Ga. 849, 850, n. 2 (546 SE2d 277) (2001); *Paul v. State*, 272 Ga. 845, 848-849 (3) (537 SE2d 58) (2000).

[10] (Citation omitted.) *Sanchez*, 234 Ga. App. at 811 (3).

[11] See *Abernathy v. State*, 252 Ga. App. 635-636 (1) (556 SE2d 859) (2001) (plain error doctrine did not apply to trial court's failure to grant sua sponte mistrial when State's witness testified that defendant had been in prison).

A claim of ineffective assistance of counsel must be raised at the earliest practicable moment.[12] The claim is waived if appellate counsel had the opportunity to raise it before appeal in a motion for new trial, but did not do so.[13] Waiver does not occur, however, "where the appellate counsel did not participate in the motion for new trial, and the issue of ineffectiveness of counsel is properly raised for the first time on appeal."[14]

Emilio's trial counsel filed a timely notice of appeal and motion for new trial. Eight months later, trial counsel withdrew the motion for new trial. Approximately one year later — and less than two months before Emilio's appellate brief was due — appellate counsel first entered an appearance. Under these circumstances, appellate counsel did not have an adequate opportunity to raise Emilio's ineffectiveness claim in the trial court and has properly made it for the first time in this court.[15]

Nevertheless, because no evidentiary hearing has been held on the claim and the record is insufficient to allow us to consider it, we remand to the trial court solely for a determination of the ineffectiveness claim. If the trial court finds that Emilio did not receive effective assistance of counsel, a new trial is required. If the court finds that Emilio did receive effective assistance, he shall have 30 days to appeal that ruling.[16]

*Judgment affirmed and case remanded with direction. Andrews, P. J., and Mikell, J., concur.*

DECIDED AUGUST 16, 2002.

*Lloyd J. Matthews*, for appellant.
*Tommy K. Floyd, District Attorney, Alicia C. Gant, Assistant District Attorney*, for appellee.

---

[12] *Howard v. State*, 233 Ga. App. 724, 730 (7) (505 SE2d 768) (1998) (whole court).
[13] Id.
[14] (Citation and punctuation omitted.) Id.
[15] See *Strong v. State*, 263 Ga. 587, 590 (6) (436 SE2d 213) (1993); *Mallon v. State*, 253 Ga. App. 51, 54 (5) (557 SE2d 409) (2001); *Davitt v. State*, 232 Ga. App. 427, 429 (4) (502 SE2d 300) (1998).
[16] See *Mallon*, 253 Ga. App. at 54 (5).