## A04A0221. SKAGGS-FERRELL v. THE STATE.
(596 SE2d 743)

JOHNSON, Presiding Judge.

A grand jury indicted Olatunde Skaggs-Ferrell for the aggravated assault of Nathan Grier, the kidnapping of Nathan Grier, the burglary of Grier's home, the aggravated assault of Abby Livingston, and attempt to commit armed robbery. A jury found Skaggs-Ferrell guilty of the aggravated assault of Grier, burglary, and attempted armed robbery. Skaggs-Ferrell appeals, alleging (1) the evidence was insufficient to support his convictions, (2) he was convicted based on the uncorroborated testimony of his co-defendant, (3) the trial court erred in its charge to the jury, (4) he received ineffective assistance of trial counsel, (5) the state improperly kept one of its witnesses in the courtroom in violation of the rule of sequestration, and (6) the trial court erroneously refused to allow him to impeach the state's witness. We affirm in part and remand in part.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in this light, the evidence shows that on February 17, 1999, a home invasion took place in Douglasville at the home of Abby Livingston and her husband, Nathan Grier. Four armed men entered the bedroom, grabbed Grier from the bed, hit him in the head with a gun, and threw him to the ground. The men threatened to kill Grier and Livingston unless they were given money. When the house alarm

---

[1] *Cockrell v. State,* 248 Ga. App. 359 (1) (545 SE2d 600) (2001).

[2] *Odett v. State,* 273 Ga. 353-354 (1) (541 SE2d 29) (2001).

[3] *Parnell v. State,* 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

began to sound, two of the men ran from the bedroom, followed shortly by the third. As the last invader turned to retreat, he continuously fired his weapon as he left. Grier called police and gave them a description of the dark-colored car.

Neighbors across the street woke to the sound of screaming and gunfire. They saw someone standing next to a dark-colored car firing a gun toward Livingston's and Grier's home. When one of the neighbors went to check on Livingston and Grier, he saw that the door had been kicked in. Another neighbor phoned police and told them that the dark-colored car was heading toward Chapel Hill Road.

An officer heard the lookout for "a dark-colored vehicle with several black male occupants." A short time later, as he was driving on Chapel Hill Road, the officer saw a dark Ford Tempo with four black males in an area very close to the home invasion. The officer activated his lights to investigate, but the Tempo did not stop. Instead, the Tempo merged onto the highway, and the officer saw a silver object thrown from its rear passenger side. The officer called in a vehicle pursuit. The Tempo accelerated to speeds over 110 mph while weaving between cars in and out of traffic. At one point, the Tempo turned off its headlights on the highway in an apparent attempt to lose the pursuing police. The Tempo then left the highway, and the four men in the Tempo opened and closed the car's doors. Eventually, the Tempo crashed into a parked car. Two of the men fled to the left and two fled to the right.

Officers captured one of the men, but the other three escaped. The captured suspect originally gave a false name for himself and gave false names for the other three men. Subsequently, officers learned the suspect's name was Kashaka Wilson. Wilson ultimately identified the men involved with him in the home invasion, including Skaggs-Ferrell. Wilson and two of the other men involved in the home invasion described how the men planned the home invasion. They further testified that three guns were used, including a 9 mm gun and a .38 mm gun. Skaggs-Ferrell used one of the guns, and the guns were thrown out of the car windows during the police chase. Sixteen fingerprints were taken from the Tempo, and the GBI confirmed that the prints recovered from the rear passenger door and the rear view mirror belonged to Skaggs-Ferrell. A pair of handcuffs, a flashlight, and four jackets were recovered from the rear passenger floorboard.

An investigator recovered seven shell casings in the street at the front of the house and in the foyer. The casings were from both a Kel-Tech 9 mm gun and a .38 mm gun. Three recovered bullets were fired from a 9 mm gun. The investigator also noted that the front door had been kicked in. A search of the area where the officer had seen a silver object thrown from the car revealed a .38 mm gun and a Kel-Tech 9 mm gun. GBI testing proved the Kel-Tech 9 mm gun fired

the shell casings recovered from the scene. Testing also revealed that the same gun fired at least two of the bullets found on the scene.

Skaggs-Ferrell does not contest his presence in the Tempo on the night of the home invasion. He merely argues that the evidence was insufficient to support the jury's verdict because there is no direct evidence that he did anything but remain in the back of the car throughout the home invasion. He also argues that he cannot be convicted on the uncorroborated testimony of an accomplice. However, both victims clearly testified that four men entered their home and their bedroom on the night of the home invasion and demanded money. And, Wilson testified that the four men rode out to the house together to commit the home invasion and that Skaggs-Ferrell possessed one of the guns. There is also no dispute that Skaggs-Ferrell fled the Tempo after it crashed.

Although mere presence at the scene of a crime is not sufficient to convict one of being a party to a crime, criminal intent may be inferred from conduct before, during, and after the commission of the crime.[4] Whether Skaggs-Ferrell was a party to the crimes and aided and abetted Wilson and the other two men in the home invasion was a question for the jury.[5] The evidence was sufficient for the jury to find Skaggs-Ferrell guilty beyond a reasonable doubt of aggravated assault against Grier, burglary, and attempted armed robbery.[6]

2. Skaggs-Ferrell contends the trial court erred in failing to charge the jury that a defendant may not be convicted on the uncorroborated testimony of an accomplice. While this is a correct statement of the law,[7] such a charge was not warranted in the present case because both victims testified that four men entered their home and their bedroom during the home invasion. Thus, the victims' testimony corroborated Wilson's testimony regarding Skaggs-Ferrell's involvement in the home invasion. In addition, the testimony of at least one of the other men involved in the home invasion also corroborated Wilson's testimony regarding Skaggs-Ferrell's involvement in the home invasion. Failure to give this charge was not error.[8]

3. Skaggs-Ferrell contends the trial court erred in failing to charge the jury on his requested lesser-included offense of criminal trespass. However,

---

[4] *Owens v. State*, 263 Ga. App. 478, 479 (1) (588 SE2d 265) (2003); *Parnell*, supra at 219 (6).

[5] *Parnell*, supra.

[6] See *Cockrell*, supra at 360-361 (1).

[7] OCGA § 24-4-8.

[8] See *Slaughter v. State*, 227 Ga. App. 739, 741 (1), (2) (490 SE2d 399) (1997).

where the defendant has denied entering the burglarized premises, we have held that trespass instructions are not appropriate. . . . The jury has the choice either to convict the defendant of burglary if it believed the State's evidence or to acquit the defendant if the State did not meet its burden; however, the jury will not be permitted the compromise choice of disbelieving the defendant and returning a verdict of guilty on the lesser offense of criminal trespass, differing from burglary only in criminal intent.[9]

Here, according to Skaggs-Ferrell, his sole defense was that he was merely present at the scene and did not get out of the car during the home invasion. The trial court did not err in refusing to give a jury charge on criminal trespass.[10]

4. Skaggs-Ferrell argues the state violated the rule of sequestration by allowing an investigator to remain in the courtroom. The record shows that when Skaggs-Ferrell's attorney requested the rule of sequestration, the state asked the trial court to allow the case investigator to remain in the courtroom to assist the prosecution in the case. The trial court granted the state's request. We find no error.

It has long been the law in this state that the trial court may exercise its discretion in allowing a police officer or an investigator to remain in the courtroom based on the district attorney's statement that such person's presence is necessary for the orderly presentation of the state's case.[11] Contrary to Skaggs-Ferrell's argument, there was no violation of the rule of sequestration.

5. The trial court did not err in refusing to merge the burglary and attempted armed robbery charges. Not only are the elements and the culpable mental state required of these crimes different,[12] but the facts which proved each crime were different.

The indictment charged Skaggs-Ferrell with burglary in that he "without authority and with the intent to commit the felony of Armed Robbery therein" entered the victims' home. This crime was complete when the door was forced open and the home was entered. The intent to commit the armed robbery was provable from statements made by the co-defendants that they intended to rob the victims because they believed that Grier kept a large amount of money in his home. There

[9] (Citation and punctuation omitted.) *Riley v. State*, 252 Ga. App. 781, 783-784 (3) (556 SE2d 917) (2001); see also *Bradshaw v. State*, 237 Ga. App. 627, 629 (1) (516 SE2d 333) (1999).
[10] See *Riley*, supra; *Bradshaw*, supra.
[11] See *Scully v. State*, 256 Ga. 683, 685 (3) (353 SE2d 29) (1987); *Cunningham v. State*, 248 Ga. 558, 561-562 (7) (284 SE2d 390) (1981); *Williams v. State*, 233 Ga. App. 70, 72 (3) (503 SE2d 324) (1998).
[12] See OCGA §§ 16-4-1; 16-7-1 (a); 16-8-41 (a).

was no need to prove the additional substantial physical acts of demanding money and brandishing a gun, as required by the attempted robbery charge. It was not error for the court to convict and sentence Skaggs-Ferrell separately for burglary and attempted armed robbery because neither of those crimes is included in the other.[13]

6. Skaggs-Ferrell contends the trial court erred in giving the following charge:

> A verdict of guilty may not rest upon fingerprint identification alone unless you are satisfied beyond a reasonable doubt that fingerprints left by the accused were in fact found and that they could only have been impressed by the accused on the automobile during the commission of the crime, and that such identification under all the facts and circumstances of this case is sufficient to satisfy your mind of the guilt of the accused to the exclusion of any other reasonable hypothesis and beyond a reasonable doubt.

According to Skaggs-Ferrell, this charge destroyed his sole defense of mere presence. We disagree. Nothing prevented Skaggs-Ferrell from arguing that he was merely present in the Tempo at the scene of the home invasion when the prints were left.

Furthermore, even if the trial court did err in giving this charge, we find no reversible error. We must consider the charge to the jury as a whole in determining whether one incorrect charge constitutes reversible error.[14] Here, the jury was also charged on the circumstantial nature of fingerprints and that their evidentiary value, if any, would be diminished by a showing that the fingerprints could have been left on the article at a time or under circumstances consistent with Skaggs-Ferrell's innocence. The trial court further charged the jury regarding the presumption of innocence, the burden of proof, the credibility of witnesses, intent, party to a crime, mere association, and mere presence, as well as the elements of each offense alleged in the indictments. Having reviewed the charge as a whole, we conclude that the trial court's charge did not mislead or confuse the jury so as to constitute reversible error.[15]

7. Skaggs-Ferrell argues that the trial court erred in refusing to charge the jury that neither presence, nor flight, nor both together, without more, is conclusive of guilt. While this is a correct statement

---

[13] See *Evans v. State*, 240 Ga. App. 297, 299 (2) (523 SE2d 103) (1999).
[14] *Nanthabouthdy v. State*, 245 Ga. App. 456, 458 (2) (538 SE2d 101) (2000).
[15] Id.

of the law,[16] we find no abuse of the court's discretion in refusing to give the requested charge. The Supreme Court has abolished the jury instruction stating that flight in criminal cases may constitute an inference of guilt.[17] According to the Supreme Court, such a charge

> carries with it the potential of being interpreted by the jury as an intimation of opinion by the court that there is evidence of flight and that the circumstances of flight imply the guilt of the defendant; this is especially true since the trial court does not give specific charges on other circumstances from which guilt or innocence may be inferred.[18]

We find the same logic applicable to the jury instruction requested by Skaggs-Ferrell. While both the state and Skaggs-Ferrell's attorney were permitted to offer evidence of and argue both flight and presence, we find no abuse in the trial court's refusal to give the requested charge. We note that the jury was charged on mere presence.

8. Skaggs-Ferrell contends the trial court erred in refusing to allow him to introduce evidence of Grier's prior convictions. The record shows that the trial court excluded the evidence because Skaggs-Ferrell had not complied with the reciprocal discovery requirements of OCGA § 17-16-4. Skaggs-Ferrell does not dispute that he failed to give the required notice to the state, but argues that the state was aware of the prior convictions and, therefore, would not have been harmed by the evidence. Pretermitting whether the trial court properly excluded evidence of the prior convictions, we find that any error was harmless in light of the other evidence at trial.

Even if Grier's credibility regarding the details of the home invasion could have been successfully challenged by introducing evidence of his prior convictions, there is a high probability that the exclusion of the evidence did not contribute to the verdict.[19] In addition to Grier's testimony, Wilson testified about Skaggs-Ferrell's involvement in the home invasion, and Livingston testified regarding the details of the home invasion and the fact that four men entered their bedroom during the home invasion. Considering all the evidence presented in this case, any error in excluding evidence of Grier's prior convictions was harmless.[20]

---

[16] *Myers v. State*, 193 Ga. App. 372, 373 (387 SE2d 640) (1989).
[17] See *Renner v. State*, 260 Ga. 515, 518 (3) (b) (397 SE2d 683) (1990).
[18] (Citation omitted.) Id.
[19] See *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976); *Beck v. State*, 250 Ga. App. 654, 659-660 (4) (551 SE2d 68) (2001).
[20] See *Talley v. State*, 251 Ga. 42, 43 (302 SE2d 355) (1983).

9. Skaggs-Ferrell argues that his trial counsel and first appellate counsel were ineffective in a number of respects. However, it is clear from the record that the issue of ineffectiveness was not raised or addressed by the trial court. Both the Supreme Court and this Court have held that, where the issue of ineffectiveness is raised for the first time on appeal by an appellate attorney who did not represent the defendant at trial or on motion for new trial and who did not file an amended motion for a new trial, a remand for a hearing on the issue of ineffectiveness is appropriate.[21] Because no evidentiary hearing has been held on the claim and the record is insufficient to allow us to consider it, we remand the case to the trial court solely for a determination of the ineffectiveness claim. If the trial court finds that Skaggs-Ferrell did not receive effective assistance of counsel, a new trial is required. If the court finds that Skaggs-Ferrell did receive effective assistance, he shall have 30 days to appeal that ruling.[22]

*Judgment affirmed and case remanded with direction. Smith, C. J., and Phipps, J., concur.*

DECIDED MARCH 12, 2004.

*Zell & Zell, Rodney S. Zell, Mary Erickson*, for appellant.
*David McDade, District Attorney, Christopher R. Johnson, Assistant District Attorney*, for appellee.

---

[21] *Jones v. State*, 276 Ga. 663, 664 (3) (581 SE2d 546) (2003); *Emilio v. State*, 257 Ga. App. 49, 52-53 (4) (570 SE2d 372) (2002).

[22] See *Emilio*, supra at 53.