A07A1428. SKAGGS-FERRELL v. THE STATE.
(652 SE2d 891)

MIKELL, Judge.

In the second appearance of this case before this Court,[1] Olatunde Skaggs-Ferrell contends that we should reverse his convictions for aggravated assault, burglary, and attempted armed robbery because he received ineffective assistance of counsel. For the reasons discussed below, we affirm.

The relevant facts, as set forth in *Skaggs-Ferrell,*[2] follow:

[O]n February 17, 1999, a home invasion took place in Douglasville at the home of Abby Livingston and her husband, Nathan Grier. Four armed men entered the bedroom, grabbed Grier from the bed, hit him in the head with a gun, and threw him to the ground. The men threatened to kill Grier and Livingston unless they were given money. When the house alarm began to sound, two of the men ran from the bedroom, followed shortly by the third. As the last invader turned to retreat, he continuously fired his weapon as he left.

---

[5] See id.
[1] In *Skaggs-Ferrell v. State,* 266 Ga. App. 248 (596 SE2d 743) (2004), we affirmed Skaggs-Ferrell's convictions, but remanded the case to the trial court for consideration of his ineffective assistance of counsel claim. On remand, the trial court considered the issue and found that trial counsel was not ineffective. Skaggs-Ferrell appeals from this ruling.
[2] Id.

Grier called police and gave them a description of the dark-colored car. Neighbors across the street woke to the sound of screaming and gunfire. They saw someone standing next to a dark-colored car firing a gun toward Livingston's and Grier's home. When one of the neighbors went to check on Livingston and Grier, he saw that the door had been kicked in. Another neighbor phoned police and told them that the dark-colored car was heading toward Chapel Hill Road. An officer heard the lookout for "a dark-colored vehicle with several black male occupants." A short time later, as he was driving on Chapel Hill Road, the officer saw a dark Ford Tempo with four black males in an area very close to the home invasion. The officer activated his lights to investigate, but the Tempo did not stop. Instead, the Tempo merged onto the highway, and the officer saw a silver object thrown from its rear passenger side. The officer called in a vehicle pursuit. The Tempo accelerated to speeds over 110 mph while weaving between cars in and out of traffic. At one point, the Tempo turned off its headlights on the highway in an apparent attempt to lose the pursuing police. The Tempo then left the highway, and the four men in the Tempo opened and closed the car's doors. Eventually, the Tempo crashed into a parked car. Two of the men fled to the left and two fled to the right. Officers captured one of the men, but the other three escaped. The captured suspect originally gave a false name for himself and gave false names for the other three men. Subsequently, officers learned the suspect's name was Kashaka Wilson. Wilson ultimately identified the men involved with him in the home invasion, including Skaggs-Ferrell. Wilson and two of the other men involved in the home invasion described how the men planned the home invasion. They further testified that three guns were used, including a 9 mm gun and a .38 mm gun. Skaggs-Ferrell used one of the guns, and the guns were thrown out of the car windows during the police chase. Sixteen fingerprints were taken from the Tempo, and the [Georgia Bureau of Investigation (GBI)] confirmed that the prints recovered from the rear passenger door and the rear view mirror belonged to Skaggs-Ferrell. A pair of handcuffs, a flashlight, and four jackets were recovered from the rear passenger floorboard. An investigator recovered seven shell casings in the street at the front of the house and in the foyer. The casings were from both a Kel-Tech 9 mm gun and a .38 mm gun. Three recovered bullets were fired from a 9 mm gun. The investigator also noted that the front door had been kicked in. A

search of the area where the officer had seen a silver object thrown from the car revealed a .38 mm gun and a Kel-Tech 9 mm gun. GBI testing proved the Kel-Tech 9 mm gun fired the shell casings recovered from the scene. Testing also revealed that the same gun fired at least two of the bullets found on the scene.[3]

Skaggs-Ferrell contends that his trial counsel was ineffective on several grounds. To prevail on a claim of ineffective assistance of counsel, defendant must show that his attorney's performance was deficient and that the deficiency prejudiced the defense.[4] "Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffective assistance claim. The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous."[5] "Furthermore, we will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result."[6]

1. Skaggs-Ferrell first contends he received ineffective assistance of counsel because his trial counsel failed to move for the suppression of the illegal, warrantless search of the vehicle in which he was passenger. We disagree.

"The constitutional protection of the Fourth Amendment does not apply to property which has been abandoned."[7] Here, Skaggs-Ferrell and his co-defendants led officers on a high speed chase in the Tempo, crashed the vehicle into a parked car, and then fled on foot, abandoning the vehicle.[8] The officers were thus authorized to search the vehicle and the fruits of that search, including Skaggs-Ferrell's fingerprints and accomplice Kashaka Wilson's statement identifying Skaggs-Ferrell, were not required to be suppressed.[9]

"When trial counsel's failure to pursue a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been

---

[3] Id. at 248-250 (1).

[4] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[5] (Citations and punctuation omitted.) *Wright v. State*, 265 Ga. App. 855 (1) (595 SE2d 664) (2004).

[6] (Punctuation and footnote omitted.) *Machuca v. State*, 279 Ga. App. 231, 234-235 (2) (630 SE2d 828) (2006).

[7] (Footnote omitted.) *Watson v. State*, 247 Ga. App. 498, 499 (544 SE2d 469) (2001); see also *Elliott v. State*, 230 Ga. App. 855, 856 (1) (497 SE2d 817) (1998).

[8] *Skaggs-Ferrell*, supra at 249 (1).

[9] See, e.g., *Burgeson v. State*, 267 Ga. 102, 106 (3) (b) (475 SE2d 580) (1996); *Prather v. State*, 279 Ga. App. 873, 876 (1) (633 SE2d 46) (2006).

suppressed had counsel pursued the motion."[10] Since a motion to suppress would not have been successful, trial counsel's failure to pursue it does not constitute ineffective assistance.[11]

2. Skaggs-Ferrell also contends that trial counsel was ineffective for failing to move to exclude fingerprint evidence obtained as a result of his illegal arrest. In this regard, Skaggs-Ferrell claims that his arrest was illegal because (a) the arrest warrants were executed on February 18, 1999, but not sworn and signed until February 19, 1999, and (b) the warrants were insufficient under OCGA § 17-4-41 (a).[12]

Pretermitting whether the alleged dating error renders appellant's arrest illegal, the record reflects that the fifth warrant for the crime of armed robbery was sworn to, signed, and executed on February 18, 1999. As Skaggs-Ferrell was lawfully arrested pursuant to that warrant, his fingerprints were admissible and a motion to exclude them as evidence would have been futile.

As to the second argument, Skaggs-Ferrell contends that the warrants did not sufficiently describe the offenses for which he was charged, containing nothing but conclusions. For example, appellant claims that the aggravated assault warrant should have stated that "the accused went in the house with several others, pointed a gun at [the victim], hit him over the head with a gun, and then did shoot a gun in [his] direction." Instead, the warrant merely stated that "said accused did assault the person of Nathan Grier with a deadly weapon, to wit a handgun, which when used in an offensive manner is likely to or actually does cause serious bodily injury." This same argument was made in *Smith v. Stynchcombe*,[13] and rejected by our Supreme Court:

> Apparently appellant is seeking to have the probable cause requirements of an affidavit on which a search warrant is issued, made applicable to arrest warrants. Georgia imposes no such requirements on its arrest warrants.[14]

---

[10] (Punctuation and footnote omitted.) *Dawson v. State*, 271 Ga. App. 217, 221 (2) (b) (609 SE2d 158) (2005).

[11] See *Rose v. State*, 263 Ga. App. 263, 264 (1) (b) (587 SE2d 326) (2003).

[12] OCGA § 17-4-41 (a) provides that
[a]n affidavit made or warrant issued for the arrest of a person who is accused of violating the penal laws of this state shall include, as nearly as practicable, the following facts: (1) The offense, including the time, date, place of occurrence, against whom the offense was committed, and a statement describing the offense; and (2) The county in which the offense was committed.

[13] 234 Ga. 780 (218 SE2d 63) (1975).

[14] (Citations omitted.) Id. at 781.

The warrant satisfied the requirements of OCGA § 17-4-41 (a).[15]

3. Skaggs-Ferrell next contends that trial counsel was ineffective for failing to object to the trial court's recharge to the jury on aggravated assault. He complains that the trial court recharged the jury on aggravated assault "with intent to murder, to rape, or to rob[,]" when the indictment charged him with aggravated assault with a deadly weapon.

Skaggs-Ferrell was specifically indicted for aggravated assault by assaulting Grier "with a handgun, a deadly weapon, by firing said gun in the direction of Nathan Grier." During its charge to the jury, the trial court properly read the indictment, instructed the jury that the state was required to prove beyond a reasonable doubt every material allegation of the indictment, and instructed the jury on aggravated assault with a deadly weapon. The trial court also provided the jury with the indictment during deliberations. During deliberations, the jury requested a definition of aggravated assault. The trial court repeated its original charge on assault and aggravated assault with a deadly weapon. The jury returned with a second question, as follows: "Do we find the defendant guilty according to the indictment charges or the definition of aggravated assault as defined by the judge?" The trial court and defense counsel both stated that they did not understand the question. Upon returning to the courtroom, the following colloquy took place between the trial court and the jury foreperson:

> Jury Fore[person]: Well, I think we're not — we're not clear about the — the — I guess the wording in the indictment. Is it — is it specific to the wording in the indictment that we should be —
> The Court: Yes. In other words, if the indictment charges as assault — Count 1 is an aggravated assault upon Nathan Grier with a handgun, a deadly weapon, by firing said gun in his direction. So that's what you have to say guilty or not guilty of. And, of course, the other count I think it's four where the victim is . . . Abby Livingston with a handgun, a deadly weapon, by firing said gun in her direction.
> Jury Fore[person]: Okay. You didn't read us the definition of aggravated assault.
> The Court: Yes, sir.
> Jury Fore[person]: And the question is do we take the description or the definition of what you read us and apply that to that?

---

[15] See, e.g., *Dunn v. State*, 234 Ga. App. 623, 624 (2) (507 SE2d 170) (1998).

The Court: Absolutely. That's what you do.

Jury Fore[person]: Okay. And is there — is conspiracy part of that definition of aggravated assault?

The Court: Well, let me see. The question I guess is — you're asking if a conspirator commits aggravated assault as alleged in the indictment, could the Defendant be held guilty? Is that what you're asking me?

Jury Fore[person]: I don't think that's exactly what I'm asking.

The Court: Okay. You said something about conspiracy. Conspiracy is an agreement by two or more people to violate the law.

Jury Fore[person]: Right. Is there — is there — is the term conspiracy in the definition of aggravated assault?

The Court: No, sir.

Jury Fore[person]: It is not?

The Court: No sir. Crimes are charged and I define like there's an attempted robbery and a burglary and all that. Conspiracy is — could apply to any charge. A conspiracy is a way for the members of the conspiracy to be convicted. I'm not sure that's as clear to you. I have to not wing it too much or I'll —

Jury Fore[person]: No, I understand.

The Court: I can read you conspiracy again I guess if you want it.

Jury Fore[person]: Would you please? I think that would help.

The trial court then recharged on conspiracy, mere association, and party to a crime. When the jury then sent a third note, requesting a copy of OCGA §§ 16-5-21 and 16-5-40, the trial court responded by twice recharging the jury without objection on kidnapping and aggravated assault "(1) with intent to murder, to rape, or to rob; [or] (2) with a deadly weapon."

"It is generally not error to give an entire Code section in a charge, even though part of the section may be inapplicable to the allegations and the evidence."[16]

> However, it is error to charge the jury that a crime may be committed by alternative methods, when the indictment charges it was committed by one specific method. If there is

---

[16] (Citation and punctuation omitted.) *Cook v. State*, 210 Ga. App. 323, 324 (2) (436 SE2d 61) (1993).

a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment, then the conviction is defective because of a fatal variance between the proof at trial and the indictment returned by the grand jury.[17]

Unlike in *Blige*,[18] where the trial court emphasized the wrong method of committing the crime, here, the trial court did not emphasize the wrong method; specifically instructed the jury that the state must prove that the offense was committed in the manner charged in the indictment; and also accurately charged on parties to a crime and on conspiracy. More importantly, even though the identical charge in *Blige* was held to be reversible error, that appeal did not involve a claim of ineffective assistance of counsel; resolution of this appeal requires an entirely different analysis. Pretermitting the issue of whether trial counsel was deficient in her failure to object to the recharge on aggravated assault, Skaggs-Ferrell must show that there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's error. This, he cannot do.

It is clear from the evidence presented at trial and the jury questions that the jury was confused about whether appellant could be convicted of aggravated assault with a deadly weapon even though he did not personally fire the gun at Grier. Given that the trial court twice instructed the jury that it had to find that appellant committed aggravated assault as laid out in the indictment and sent out a copy of the indictment with the jury, it is highly probable that the charge did not contribute to the jury's verdict.[19] Thus, trial counsel's failure to object to the recharge does not amount to ineffective assistance of counsel, and does not warrant a reversal.

4. Skaggs-Ferrell next contends that trial counsel's ineffectiveness in failing to comply with reciprocal discovery precluded him from introducing evidence of Grier's prior convictions. In his prior appeal, Skaggs-Ferrell argued that the trial court erred in refusing to allow him to introduce evidence of Grier's prior convictions because he had not complied with the requirements of OCGA § 17-16-4 (b). In Division 8 of our prior opinion, we specifically ruled that "[c]onsidering all the evidence presented in this case, any error in excluding the

---

[17] (Citation and punctuation omitted.) *Blige v. State*, 208 Ga. App. 851, 852 (2) (432 SE2d 574) (1993). Accord *Dudley v. State*, 283 Ga. App. 86, 87-88 (1) (640 SE2d 677) (2006). See also *Gordon v. State*, 244 Ga. App. 265, 267 (2) (535 SE2d 289) (2000).

[18] Supra.

[19] See, e.g., *Peavy v. State*, 262 Ga. 782 (2) (425 SE2d 654) (1993); *Abreu v. State*, 206 Ga. App. 361, 362 (1) (425 SE2d 331) (1992).

evidence of Grier's prior convictions was harmless."[20] As any error was harmless, Skaggs-Ferrell's claim of ineffectiveness fails.[21]

5. Skaggs-Ferrell last contends that trial counsel was ineffective for failing to impeach the victims with their prior inconsistent statements to police. Skaggs-Ferrell points out that counsel should have introduced into evidence the police reports showing that victims Livingston and Grier reported being burglarized by three men, not four. Trial counsel's performance was not ineffective in this regard.

First, we note that Skaggs-Ferrell never asked counsel about this issue at the hearing. In the absence of contrary evidence, defense counsel's actions are presumed to be strategic.[22] In any event, as the state correctly points out, counsel conducted a thorough cross-examination of the state's witnesses, eliciting the exact testimony Skaggs-Ferrell complains was not presented: (1) Officer John Sweat testified that Grier told him he was robbed by three men; (2) Livingston confirmed that she told the investigator that "the three [men] that came into [my] house had guns";[23] and (3) appellant's co-conspirators testified that appellant stayed in the car during the home invasion. "The manner in which an attorney attacks the credibility of a witness falls within the ambit of trial tactics."[24]

Thus, we conclude the trial court's denial of appellant's claim of ineffective assistance of counsel was not clearly erroneous and should be affirmed.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 19, 2007.

*Zell & Zell, Rodney S. Zell*, for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.

---

[20] (Footnote omitted.) *Skaggs-Ferrell*, supra at 253 (8).
[21] See *Maddox v. State*, 263 Ga. App. 507, 509 (2) (588 SE2d 305) (2003) (actions of trial counsel that resulted in no harm to defendant do not provide any basis for a finding of ineffectiveness).
[22] See *Herndon v. State*, 235 Ga. App. 258, 259 (509 SE2d 142) (1998).
[23] On redirect, Livingston explained that three men came into the bedroom and one remained in the hallway.
[24] (Citation omitted.) *Washington v. State*, 276 Ga. 655, 659 (3) (a) (581 SE2d 518) (2003).