A11A0901. MITCHELL v. THE STATE.
A11A0902. DAWSON v. THE STATE.
(718 SE2d 126)

PHIPPS, Presiding Judge.

Tony Maurice Mitchell and David Dawson were tried together on charges of burglary (Count 1), criminal damage to property in the second degree (Count 2), theft by taking (Count 3), and misdemeanor obstruction of an officer (Count 4). Both men were acquitted of Count 2, but they were found guilty of the remaining charges. They appeal, contending that the evidence was insufficient to authorize the convictions for burglary and obstruction of an officer. Dawson additionally contends that he received ineffective assistance of trial counsel, and that the trial court erred by not inquiring into his counsel's possible conflict of interest and by not instructing the jury on his sole defense. Because we find no merit in the assertions, we affirm the convictions.

1. Mitchell and Dawson were charged with burglary by unlawfully entering the dwelling house and building of another to commit

a theft.[1] They contend the evidence was insufficient to support their convictions for burglary because there was no showing that they entered any building.[2] This argument is unavailing.

When reviewing a challenge to the sufficiency of the evidence used to support a conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[3] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[4]

A conviction may be based on circumstantial evidence and "the proved facts need exclude only reasonable hypotheses — not bare possibilities that the crime could have been committed by someone else."[5] The applicable test is more fully set out in *Wright v. State*:[6]

> [T]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.[7]

Viewed in the light most favorable to the verdicts, the evidence showed that at approximately 2:00 a.m., on February 7, 2010, a police officer was dispatched to investigate a report that two suspicious males were walking on a particular road. The officer, having arrived at the location shortly after receiving the call, spotted movement behind a nearby residence inside the doorway of a storage shed. He turned into the driveway. As he drove up to the residence, the officer

---

[1] OCGA § 16-7-1 (a) provides: "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building . . . ." See *Mezick v. State*, 291 Ga. App. 257, 259 (2) (661 SE2d 635) (2008) (a shed used to store, shelter, and safeguard goods was a building for purposes of OCGA § 16-7-1 (a)).

[2] In his appellate brief, Dawson expressly adopted Mitchell's argument as to this claim of error.

[3] *Arroyo v. State*, 309 Ga. App. 494 (711 SE2d 60) (2011).

[4] Id., citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] *Wilcox v. State*, 310 Ga. App. 382, 384 (713 SE2d 468) (2011) (punctuation omitted).

[6] 302 Ga. App. 332 (690 SE2d 654) (2010).

[7] Id. at 333 (citations and punctuation omitted).

saw Mitchell coming out of the doorway of the shed and Dawson coming from behind the residence. Mitchell and Dawson would later inform the officer that they had mistaken him (the officer) as somebody who had dropped them off "down the road" from the residence, and they walked toward the officer holding items they had removed from the property. As Mitchell and Dawson got closer to the marked police car, they began to walk away. Dawson discarded the items he held (a camera, a camera case, and a toolbox), and both he and Mitchell retreated to the back of the house, where Mitchell discarded the items he held (a garden hose and some toiletries). The officer chased Mitchell and Dawson on foot, simultaneously commanding that they stop, but they refused to stop. The chase eventually ended in the wood line of a nearby residence, where Mitchell and Dawson were apprehended.

The officer found the back door of the first residence open and the lock damaged. The padlocks were broken and the doors pried open on two sheds located on the property. A tire tool, consistent with pry marks found on the doors and frames, lay against a wall by a door.

The owner of the items recovered testified that the camera and case[8] were kept in the house and that the toolbox[9] was stored in one of the sheds. The owner of the items, having last been on the property the previous day, had secured the residence and sheds when he departed and had not given anyone permission to be on the property or to remove any of his belongings. The owner of the residence and sheds did not know Mitchell or Dawson and did not give either of them permission to be on the property or to take anything therefrom.

Although he did not appear to the officer on the scene to be suffering from any ailments, Dawson explained to the officer that he was at the residence because he was diabetic and was looking for water.

Mitchell and Dawson argue that the burglary convictions were based on circumstantial evidence and that the two suspicious individuals reportedly seen walking on a road near the crime scene could have entered or burglarized the residence and sheds. However, there was no evidence that the "suspicious individuals" were any persons other than Mitchell and Dawson. To the contrary, the appellants called a witness who testified that he had driven them to the area where the crime occurred, at about the time the crime occurred. He

---

[8] The owner testified that he had owned the camera and case for two or three years and had paid between $400 and $500 for them.

[9] The owner testified that the value of the toolbox was $100 and that inside of it, he kept "computer-related" items which he used in his computer business.

testified that Mitchell and Dawson exited the vehicle and walked down the roadway and that a light soon appeared in a nearby house. Whether the circumstances were sufficient to exclude every reasonable hypothesis save Mitchell's and Dawson's guilt was a question for the jury.[10]

Mitchell and Dawson also contend that their possession of the items did not prove that they had entered the residence because a family member of the items' owner could have left the camera, camera case, toolbox, and toiletries outside. But the reasonableness of that hypothesis was a question for the jury,[11] especially in light of the surrounding circumstances and the testimony of the items' owner to the contrary. The evidence here supports the verdict and the jury could reasonably have found that the circumstantial evidence excluded every reasonable hypothesis except that of Mitchell's and Dawson's guilt.[12] Mitchell and Dawson lacked authority to enter the premises, and they fled when confronted by a police officer. "[E]vidence that the appellant[s] [were] attempting to avoid police detection . . . during the commission of a crime, just like evidence of flight following a crime, is circumstantial evidence of consciousness of guilt."[13]

Although there was no direct evidence that Dawson personally entered the residence or sheds, the evidence that he was on the property carrying items taken from it and fled from the officer with Mitchell (who *was* seen coming out of the doorway of one of the sheds) authorized the jury to find beyond a reasonable doubt that Dawson participated in the burglary by actively aiding or abetting Mitchell in committing the crime.[14]

2. Relying on *Connelly v. State*,[15] Mitchell and Dawson contend the evidence was insufficient to support the convictions for misdemeanor obstruction of an officer because the police officer never

---

[10] *Wilson v. State*, 230 Ga. App. 271, 273 (2) (495 SE2d 894) (1998).

[11] See *Wilcox*, supra.

[12] Id.; *Wilson*, supra; *Johnson v. State*, 275 Ga. App. 21, 21-23 (619 SE2d 731) (2005) (evidence was sufficient for burglary conviction, where the defendant was seen in the broken doorway of the house, there were pry marks around the door, and the door was off its hinges); *Wallis v. State*, 170 Ga. App. 354 (317 SE2d 331) (1984) (evidence was sufficient for burglary conviction, where defendant was seen on the steps to the front door of the burglary victim's house and on same date pawned property stolen from that house); *Daniel v. State*, 48 Ga. App. 789 (173 SE 485) (1934) (evidence was sufficient for burglary conviction, where defendant was seen coming out of the back door of the house about 5:00 a.m., a window and refrigerator door had been opened, and defendant was apprehended moments later running a few blocks from the scene).

[13] *Gill v. State*, 229 Ga. App. 462, 463-464 (2) (494 SE2d 259) (1997).

[14] See OCGA § 16-2-20 (defining party to a crime); *Green v. State*, 301 Ga. App. 866, 868 (1) (a) (689 SE2d 132) (2010).

[15] 298 Ga. App. 223 (679 SE2d 790) (2009) (physical precedent only).

"announced his identity, character or purpose as a peace officer as required by OCGA § 16-10-24 (a)."[16]

Under OCGA § 16-10-24 (a), "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his duties is guilty of a misdemeanor." Thus, as one of the essential elements of this misdemeanor offense, the state must show that the defendant committed the act knowingly and wilfully.[17]

Mitchell's and Dawson's assertion that there was no evidence of a knowing and wilful obstruction is not supported by the record. Although the evidence at trial did not show that the officer orally identified himself as a police officer, the evidence did show that he was wearing a police uniform and was driving a clearly marked police vehicle.[18] The record shows that when Mitchell and Dawson approached the marked police vehicle, they fled from the officer. The officer, who was investigating a suspicious persons report, commanded that they stop, but they refused.[19] The evidence was sufficient for any rational trier of fact to find Mitchell and Dawson guilty beyond a reasonable doubt of misdemeanor obstruction of an officer.[20]

Mitchell and Dawson's reliance on *Connelly*[21] is misplaced for two reasons. First, *Connelly* is not binding authority.[22] Second, *Connelly* is factually distinguishable. In that case the court reversed a conviction for obstruction of a law enforcement officer, holding that "although [the defendant] did not have a right to flee that encounter [with a police officer], he [defendant] did not drive away until after the encounter apparently had ended."[23] There is no evidence in this case, nor do Mitchell and Dawson contend, that the encounter with the police officer had ended, thus justifying their flight from the officer.

3. Dawson contends his trial counsel was ineffective because counsel's representation of both Mitchell and Dawson constituted an

---

[16] In his appellate brief, Dawson expressly adopted Mitchell's argument as to this claim of error.

[17] *Reddick v. State*, 298 Ga. App. 155, 156 (1) (679 SE2d 380) (2009).

[18] See id.

[19] *Dukes v. State*, 275 Ga. App. 442, 443 (1) (622 SE2d 587) (2005) (flight from an officer after being ordered to halt was misdemeanor obstruction of an officer where police vehicle was unmarked but one officer identified himself as a police officer despite defendant's claim that he did not see any police vests).

[20] *Reddick*, supra at 156-157 (1).

[21] Supra.

[22] Court of Appeals Rule 33 (a) (if there is a concurrence in judgment only without a statement of agreement with all that is said in the opinion, the opinion is physical precedent only).

[23] Id. at 225 (footnote omitted).

"inherent conflict of interest" for which counsel failed to obtain either a written or recorded waiver prior to trial. It is true that Mitchell and Dawson were represented by the same attorney at trial.

> A defendant who raised no objection at trial (as is true in this case) must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. Where the contention is only the possibility of conflict, this is insufficient to impugn a criminal conviction.[24]

At the hearing on the motion for new trial, appellate counsel ultimately conceded that there was no actual conflict, but maintained that a conflict regarding the duty of loyalty could have existed. That is not sufficient.[25]

The trial court asked Dawson whether he knew "something about Mr. Mitchell's case that you told [trial counsel] . . . that was bad about Mr. Mitchell," and Dawson answered, "[N]o, sir." The court then asked Dawson whether he thought Mitchell told trial counsel anything bad about Dawson. Dawson answered, "[N]o, sir, I don't think he did this because I know he didn't." Regarding his involvement with Mitchell, Dawson described that they were "buddies walking up the dirt road." According to Dawson, there was no finger-pointing[26] between himself and Mitchell because neither of them did anything wrong. Trial counsel testified that she did not feel there was a conflict between Mitchell and Dawson and that she apprised Mitchell and Dawson prior to trial, individually, at least three times, that if they felt a conflict existed, they needed to inform her, but they never did. Counsel testified that she had received no statements from either defendant that could have been used against the other. "Counsel therefore did not slight the defense of one defendant for another."[27]

Dawson also contends that a conflict of interest is evidenced by his trial counsel not requesting a jury charge of criminal trespass as a lesser included offense of burglary. But Dawson has failed to show how trial counsel's decision to not request a criminal trespass charge as a lesser included offense of burglary demonstrates that counsel

---

[24] *Garvin v. State*, 283 Ga. App. 242, 244 (3) (a) (641 SE2d 176) (2006) (citations and punctuation omitted).

[25] Id.

[26] See *Burns v. State*, 281 Ga. 338, 340-341 (638 SE2d 299) (2006).

[27] *Garvin*, supra at 244-245 (3) (a) (citation and punctuation omitted).

slighted the defense of one defendant for another or that counsel actively represented conflicting interests by representing both defendants at trial.

As there is no evidence that his trial "counsel actively represented conflicting interests, [Dawson] has not established the constitutional predicate for his claim of ineffective assistance [of counsel]."[28] Moreover, assuming, arguendo, that counsel erred in failing to obtain a written or recorded waiver regarding the potential conflict, because Dawson cannot show that counsel's representation of him was adversely affected by the joint representation, his claim of ineffective assistance is without merit.[29]

4. Dawson contends the trial court erred by not inquiring prior to trial into any possible conflict of interest when one attorney represented both him and Mitchell.

A trial court certainly bears a duty to inquire into a potential conflict of interest whenever the trial court is aware of circumstances creating more than a vague, unspecified possibility of conflict. However, the [United States] Supreme Court has held that a trial court's failure to inquire into the circumstances of a potential conflict does not relieve a prisoner of his or her duty to show on appeal that, in fact, a conflict existed that adversely affected his or her counsel's performance.[30]

As discussed in Division 3, Dawson has not shown that, in fact, a conflict existed that adversely affected his counsel's performance.

5. Dawson contends the trial court erred in not charging the jury on criminal trespass as a lesser included offense of burglary, even though he did not request such a charge, because it was his sole defense. Dawson is correct that the trial court did not charge on criminal trespass as a lesser included offense of burglary; but he is incorrect in contending it was his sole defense.

"The trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge."[31] But criminal trespass was not Dawson's sole

---

[28] Id. at 244 (3) (a) (citation omitted).

[29] *Woods v. State*, 275 Ga. 844, 845 (2) (573 SE2d 394) (2002) (Even "[a]ssuming, arguendo, that the written waiver of conflict appellant executed was legally insufficient, we find no merit in appellant's contention that he has shown he was adversely affected by the conflict created by trial counsel's joint representation here.").

[30] *Whatley v. Terry*, 284 Ga. 555, 564 (IV) (668 SE2d 651) (2008) (punctuation and footnotes omitted).

[31] *Price v. State*, 289 Ga. 459 (2) (712 SE2d 828) (2011) (citation and punctuation omitted).

defense. At the motion for new trial hearing, trial counsel testified that she did not request a criminal trespass charge as a lesser included offense of burglary because "it was all or nothing because to me burglary was entry with the intent to commit a theft or crime therein without permission . . . [a]nd my whole thing was to argue to the jury that . . . there was no entry." In fact,

> where the defendant has denied entering the burglarized premises, we have held that trespass instructions are not appropriate. . . . The jury has the choice either to convict the defendant of burglary if it believed the State's evidence or to acquit the defendant if the State did not meet its burden; however, the jury will not be permitted the compromise choice of disbelieving the defendant and returning a verdict of guilty on the lesser offense of criminal trespass, differing from burglary only in criminal intent.[32]

Accordingly, the trial court did not err in failing to give a jury charge on criminal trespass, sua sponte.[33]

*Judgments affirmed. Andrews and McFadden, JJ., concur.*

### DECIDED OCTOBER 28, 2011.

*Steven A. Miller,* for appellant (case no. A11A0901).
*Stearns-Montgomery & Proctor, Lance D. Dutton,* for appellant (case no. A11A0902).
*Leigh E. Patterson, District Attorney, Finnis K. Salmon, Assistant District Attorney,* for appellee.

---

[32] *Skaggs-Ferrell v. State,* 266 Ga. App. 248, 250-251 (3) (596 SE2d 743) (2004) (citation and punctuation omitted).
[33] Id.