A03A0665. PARNELL v. THE STATE.
A03A0718. MAYES v. THE STATE.
A03A0795. SNIPES v. THE STATE.
(581 SE2d 263)

Eldridge, Judge.
A Muscogee County jury found Tirus Parnell, Jamichael Mayes, and Darron Snipes guilty of various felony offenses arising from an armed home invasion perpetrated by the three men and their subsequent flight in a stolen vehicle.[1] We have consolidated their separate appeals for purposes of judicial economy. Upon review of the various claims of error alleged in their individual briefs, we affirm each conviction.

*Case No. A03A0665 — Tirus Parnell*

1. The State subpoenaed Parnell's father because of statements Parnell had made to him wherein Parnell admitted his presence during the home invasion. Parnell's statements to his father were exculpatory as to the charged offenses in that he claimed he was at the victims' home in order to purchase marijuana and "another guy came in and kicked the door down and drew a gun and waved a gun, and that was it." The defense moved to quash the subpoena, because Parnell's father is an ordained minister and, thus, any statements made to

---

[1] The jury found all three defendants guilty of three counts of aggravated assault and one count each of burglary, armed robbery, cruelty to children, theft by receiving stolen property, and possession of a firearm during the commission of a crime; in addition Mayes was found guilty of felon in possession of a firearm, and Parnell was found guilty of theft by taking (motor vehicle).

him were privileged pursuant to OCGA § 24-9-22. The trial court denied the motion, and Parnell claims error in such ruling. We find none.

> Every communication made by any person professing religious faith, seeking spiritual comfort, or seeking counseling to a clergy person shall be deemed privileged. However, if such communications are not made to profess religious faith, or to seek spiritual comfort or guidance, but rather are conversational statements to a friend [or] frequent companion the ministerial privilege is not applicable.[2]

In this case, Parnell did not testify at the motion hearing and, thus, did not testify that he was professing religious faith, seeking spiritual comfort, or seeking spiritual counseling when he made his statements to his father.

Parnell's father testified that his son made the statements to him in the jail parking lot, after he had driven his son to jail so that he could turn himself in. Parnell's father testified that he treats his family differently than other members of his congregation. He testified that he voluntarily told the district attorney of the statements his son made; that he never indicated to the district attorney that he was ministering to his son at the time of the statements; and that he offered the exculpatory statements to the district attorney as an explanation for the charges against his son. Parnell's father testified that he did not start ministering to his son until after he was arrested, which was after the complained-of statements were made.

> Moreover, nothing about appellant's communications with [his father] indicates that appellant was professing his faith, or seeking spiritual comfort or guidance. Rather, insofar as appellant had decided to turn himself in to the police[,] . . . he asked [his father] to accompany him to the police station and talk to the police on appellant's behalf. Thus, in [talking with his father], appellant did not seek comfort or solace of a spiritual nature, but was rather seeking the help of a [parent] and source of secular strength to accompany him to the police station.[3]

Under these circumstances, we find that Parnell's statements to his father in the parking lot of the jail were not privileged communica-

---

[2] (Punctuation and footnotes omitted.) *Morris v. State*, 275 Ga. 601, 602 (2) (571 SE2d 358) (2002).

[3] Id. at 603.

tions with a clergyman, and the trial court properly denied the motion to quash the State's subpoena of Parnell's father.

2. In his last claim of error, Parnell contends he received ineffective assistance of counsel because his trial attorney put up a "good character" defense which permitted the State to introduce evidence of his prior arrests for robbery. However, Parnell failed to obtain testimony from his attorney at the motion for new trial hearing on his ineffectiveness claim. In so doing, Parnell failed to recognize his burden of proof:

> He, not the State, must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. Without trial counsel's testimony, it is extremely difficult to overcome this presumption. Because his trial attorney did not testify on the motion for new trial, [Parnell] made no affirmative showing that the purported evidentiary deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy.[4]

Here, it is quite possible that Parnell, who also did not testify at the hearing, failed to inform his defense counsel about his criminal record, thereby making a good character defense appear a reasonable strategic choice. Indeed, Parnell may have asked counsel to put forth a good character defense; in that regard, the character witnesses' names and locations would not have originated with defense counsel, but would have come from Parnell and/or his family. Certainly, a "party cannot complain of error created by his own conduct."[5]

Inasmuch as Parnell failed to establish that any aspect of trial counsel's performance was deficient, the trial court did not err in concluding that Parnell was not deprived of the effective assistance of counsel at trial.[6]

### Case No. A03A0718 — Jamichael Mayes

3. Mayes first challenges the trial court's similar transaction ruling which permitted the State to introduce evidence that Mayes committed four prior armed robberies, to which offenses Mayes pled guilty. He contends such evidence was not sufficiently similar to the charged offenses and was introduced for an improper purpose. We disagree.

---

[4] (Citations and punctuation omitted.) *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002).

[5] (Citation omitted.) *Johns v. State*, 223 Ga. App. 553, 554 (2) (479 SE2d 388) (1996).

[6] *Rivers v. State*, 271 Ga. 115, 117-118 (2) (516 SE2d 525) (1999).

[T]he test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. Similarity is an important factor in determining the admissibility of the extrinsic crime; however, it is not the only factor, nor is it necessarily the controlling factor. The ultimate issue for admissibility is whether the evidence of other crimes has relevance to the issues in the trial of the case at bar.[7]

Here, the charged incident and each of the prior armed robberies were committed by Mayes in the same general vicinity in Columbus. Mayes used a male partner in each offense. He used a handgun in each offense. The charged incident and each of the prior crimes demonstrate a pattern of opportunistic armed robberies, wherein a victim(s) is chosen; the chosen victim is "ambushed"; a handgun is held on him or her; money and/or other valuable property is taken from the victim's person or immediate presence, after which Mayes and his partner abscond immediately with the property. The State articulated as its reason for admission that such evidence would show Mayes' "bent of mind, intent, and modus operandi."

An appellate court "should not disturb the findings of the trial court on the issue of similarity or connection of similar transaction evidence unless they are clearly erroneous."[8] Under the facts presented here, and as the State articulated a proper purpose for the introduction of the evidence,[9] we do not find clear error in the trial court's decision to admit the similar acts evidence.[10]

4. We likewise reject Mayes' contention that the trial court erred in denying his motion for new trial based on co-defendant Snipes' alleged post-conviction statement that Mayes was not involved in the incident in question. No affidavit was obtained from Snipes, and the alleged statement was proffered through Mayes' trial attorney, Michael Reynolds, who testified that Snipes made such statement to

[7] (Citations and punctuation omitted.) *King v. State*, 230 Ga. App. 301, 302 (1) (496 SE2d 312) (1998).

[8] (Citation and punctuation omitted.) *Smith v. State*, 273 Ga. 356, 357 (2) (541 SE2d 362) (2001).

[9] See *Gardner v. State*, 273 Ga. 809, 810 (2) (546 SE2d 490) (2001) (modus operandi, course of conduct, and bent of mind are proper purposes for introduction of similar transaction evidence).

[10] *Smith v. State*, supra at 356.

him. Accordingly, Snipes' alleged statement was hearsay and inadmissible, since it falls under no exception to the hearsay rule.[11]

Further, the victims in this case positively identified Mayes at trial as one of the perpetrators. Snipes' alleged statement that Mayes was not one of the perpetrators would serve only to impeach the victims' testimony. "Because this evidence operates to impeach [the victims'] testimony, a new trial was not required."[12] Accordingly, the trial court did not err in denying Mayes' motion for new trial on the basis of newly discovered evidence.

### Case No. A03A0795 — Darron Snipes

5. In his first two enumerations of error, Snipes contends the trial court erred by denying his motion to sever his case from that of Parnell and Mayes. We disagree.

A trial court's decision not to sever will be affirmed absent an abuse of discretion.[13] "In a non-death penalty case, the defendant requesting a severance has the burden of making a clear showing of prejudice and a denial of due process in the absence of severance."[14] Here, three defendants are not so numerous that the jury would be likely to confuse the facts and law applicable to each.[15] The relevant evidence against each co-defendant was unambiguous, the applicable law was straightforward, and there was no evidence of any "spillover" effect from one co-defendant to another. Further, "[Snipes] has complained, but has not shown by the record, that the joint trial has

---

[11] Contrary to Mayes' contention, "necessity" does not provide an exception to the inadmissibility of the disputed hearsay statement, since a required showing for admissibility under such exception is the reliability of the declarant's statement. *Clark v. State*, 271 Ga. 6, 9 (5) (515 SE2d 155) (1999). And the declarant is, of course, Snipes, not attorney Reynolds. In this instance, "reliability" is sorely lacking: Mayes was identified by two eyewitnesses as a perpetrator of the home invasion; further, prior to conviction – when such statement would have had its strongest import – Snipes never stated that Mayes was not involved in the incident.

Under the circumstances, it cannot be said that the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility. Thus, we hold that the hearsay evidence lacked the requisite degree of reliability and trustworthiness to authorize its admission under the necessity exception.

(Citations and punctuation omitted.) *McCulley v. State*, 273 Ga. 40, 42 (2) (a) (537 SE2d 340) (2000).

[12] *Tolbert v. State*, 231 Ga. App. 516, 517 (500 SE2d 373) (1998).

[13] *Short v. State*, 256 Ga. 165, 168 (4) (345 SE2d 340) (1986).

[14] (Citation and punctuation omitted.) *Sharpe v. State*, 272 Ga. 684, 686 (2) (531 SE2d 84) (2000); accord *Owen v. State*, 266 Ga. 312, 314 (2) (467 SE2d 325) (1996).

[15] See *Moore v. State*, 224 Ga. App. 797, 798 (2) (481 SE2d 892) (1997); accord *Mayfield v. State*, 220 Ga. App. 19, 20 (2) (467 SE2d 352) (1996).

created confusion of the evidence and law applicable to each defendant."[16]

In addition, "the existence of antagonistic defenses . . . or the loss of the right to make opening and closing statements to the jury does not constitute a showing of prejudice amounting to a denial of due process."[17] And the fact that the evidence against Snipes was not as strong as that against his co-defendants does not warrant severance.

> The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process.[18]

In the present case, we conclude that Snipes did not make a clear showing that any antagonism between his co-defendants and himself was harmful to him and amounted to a denial of due process. Accordingly, we conclude that the trial court did not abuse its discretion in denying Snipes' motion to sever.

6. Next, Snipes challenges the sufficiency of the evidence against him. As an appellate court, we do not weigh the evidence, judge the credibility of witnesses, or resolve conflicts in trial testimony when the sufficiency of the evidence is challenged. Instead, we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. "As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the jury's verdict will be upheld."[19]

In that regard and in a light most favorable to the verdict,[20] the record shows that, at approximately 10:30 a.m. on Sunday, October 7, 2001, eyewitness Horace Hickey, who had known Snipes for 13 years, saw Snipes drive Parnell and Mayes to the victims' home in a white Pontiac Grand Am. Snipes let Parnell out and waited while Parnell entered the home and then returned almost immediately to the car; Snipes drove off. Thirty minutes later, Snipes drove Parnell and Mayes back to the victims' home and circled the block around the home "real slow," while the three men pointed and looked at the vic-

---

[16] (Citation and punctuation omitted.) *Price v. State*, 223 Ga. App. 185, 187 (5) (477 SE2d 353) (1996).

[17] *Steele v. State*, 216 Ga. App. 276, 279 (3) (454 SE2d 590) (1995), rev'd on other grounds, *Kennebrew v. State*, 267 Ga. 400 (480 SE2d 1) (1996).

[18] (Citations omitted.) *Moss v. State*, 275 Ga. 96, 99 (2) (561 SE2d 382) (2002).

[19] (Citation and punctuation omitted.) *Brinson v. State*, 245 Ga. App. 411, 412-413 (1) (537 SE2d 795) (2000).

[20] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

tims' house; he parked in front of the house and waited in the car while Parnell and Mayes entered the victims' residence. Shortly thereafter, Parnell and Mayes ran "at a high pace" back to the waiting car and jumped in, and Snipes drove off. Immediately, one of the victims ran to Hickey's residence "upset, crying and hysterical and asked . . . could she use [the] phone because she had just been robbed." The Pontiac Grand Am had been stolen in the early morning hours of the incident date and was found abandoned the next morning; Snipes' fingerprints were found in the vehicle when it was recovered, as were the fingerprints of Parnell and Mayes.

> A participant to a crime may be convicted although he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime. Whether appellant was a party to the crime and aided and abetted [Parnell and Mayes in the home invasion] or intentionally advised, encouraged, or counseled [Parnell and Mayes] to commit the crimes was a question for the jury.[21]

Here, Snipes was driving a stolen car that he knew was not his; he returned to the victims' house, which he had left only a short time before; he slowly circled the victims' residence, pointing at the house; he appeared to let the co-defendants out of the car for a specific purpose, since he saw them enter the victims' home and waited for them, demonstrating that he knew they would return shortly; then, when the co-defendants *ran* back to the car and jumped in, Snipes drove off in response to their rapid return. Shortly thereafter, Snipes abandoned the stolen car.

> Where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.[22]

---

[21] *Burks v. State,* 268 Ga. 504, 505 (491 SE2d 368) (1997).
[22] (Citations and punctuation omitted.) *Foster v. State,* 273 Ga. 34, 35 (1) (537 SE2d 659) (2000).

In this case, we find the evidence, although circumstantial, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Snipes was the "getaway" driver for Parnell and Mayes and, thus, was a party to the charged offenses.[23] Viewed in the light most favorable to the verdict, the jury could have found that every reasonable hypothesis except Snipes' guilt was excluded.[24]

7. Snipes contends the trial court's charge on reasonable doubt was error because "only circumstantial evidence, with a different burden of proof, was used against him." Snipes fails to state what specific error was made in the disputed charge; we have reviewed it and find it proper. In addition, the trial court charged on the law regarding circumstantial evidence, grave suspicion, and mere presence. There was no error.

8. We likewise find no error in the trial court's charge on conspiracy and parties to a crime. The evidence sufficiently raised these issues. Contrary to Snipes' contentions, "It has been repeatedly held that a conspiracy may be proven and a jury charge may be given on conspiracy and parties to a crime even though a defendant is not indicted under those theories."[25]

9. During jury deliberations, no recharge on the law was requested. However, the jury did ask the trial court if they could review a "hard copy" of the testimony of several witnesses; in addition, the jury asked to be told the exact time of the home invasion. The trial court denied both jury requests; the first because a "hard copy" of testimony was unavailable and the second because the evidence was closed. Although no objection to the trial court's response to the jury's questions was made, Snipes now claims error thereon.

Snipes' failure to object to the trial court's reply to the jury's questions waives any claim of error relating thereto. "Absent a ruling by the trial court on this issue, there is nothing for this Court to review."[26] While Snipes claims otherwise, a general reservation to a trial court's jury charge does not thereafter relieve counsel from preserving objection to the court's later interaction with the jury on matters unrelated to the court's charge. "If counsel desires to preserve an objection upon a specific point for appeal, the objection must be made at trial upon that specific ground."[27]

---

[23] "A person is concerned in the commission of a crime . . . if he . . . [i]ntentionally aids or abets in the commission of the crime." OCGA § 16-2-20 (b) (3).

[24] See *Rushing v. State*, 271 Ga. 102, 105 (3) (515 SE2d 607) (1999).

[25] (Citation and punctuation omitted.) *Mangum v. State*, 274 Ga. 573, 578 (3) (d) (555 SE2d 451) (2001).

[26] *Banks v. State*, 244 Ga. App. 191, 193 (1) (d) (535 SE2d 22) (2000).

[27] (Citations and punctuation omitted.) *Kelly v. State*, 204 Ga. App. 789 (1) (420 SE2d 651) (1992).

10. Snipes' seventh claim of error appears to be a general contention that the trial court's jury charge was error for failure "to give special separate instructions as to the law, evidence, and each of the 10 charges in the Indictment as to each Defendant." Pertinently, Snipes fails to identify the nature of these "special separate instructions"; does not direct our attention to his request for such special instructions, either orally or in writing; and fails to assert how the trial court's charge — as a whole — failed to adequately apprise the jury of the facts and the law of this case. Our review shows the trial court's charge was thorough and complete. And, Snipes' claim to the contrary notwithstanding, the trial court did indeed charge the jury that "conviction of one defendant does not necessarily require the conviction of another or of all. You, the jury, must determine the guilt or innocence of each defendant separately." Accordingly, this claim of error is meritless.

11. Finally, we reject Snipes' contention that the notice the State served him of its intent to use four prior felony convictions in aggravation of punishment was somehow defective because such notice was not re-served after the State reindicted him on the same offenses. At trial, defense counsel stated that he was aware of the State's intent to seek recidivism punishment in this case and that notice of such intent had been received. This is sufficient to satisfy the "clear notice" required by OCGA § 17-10-2.[28] Moreover, no objection was made to the introduction of Snipes' felony convictions: "I have no objection to them. They all appear to be proper certified copies of convictions of my client." Accordingly, objection to the admission of this evidence is waived.[29]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 20, 2003 —
RECONSIDERATION DENIED MARCH 13, 2003.

*Hagler, Hyles & Adams, Clark C. Adams, Jr.*, for appellant (case no. A03A0665).

*James D. Lamb*, for appellant (case no. A03A0718).

*Melvin E. Cooper*, for appellant (case no. A03A0795).

*J. Gray Conger, District Attorney, Stacey S. Jackson, Assistant District Attorney*, for appellee.

---

[28] *Mullinax v. State*, 242 Ga. App. 561, 563 (2) (530 SE2d 255) (2000); *Herrington v. State*, 243 Ga. App. 265, 267 (4) (533 SE2d 133) (2000).

[29] *Strange v. State*, 244 Ga. App. 635, 638 (2) (535 SE2d 315) (2000).