In the Supreme Court of Georgia

Decided:     June 20, 2016

S16F0446.  FROST v. FROST.

BENHAM, Justice.

Husband Timothy L. Frost and Wife Hwa Frost were married in 1980 when Husband was in the U.S. Army and stationed in Korea, Wife's native country.  The couple relocated to Georgia upon Husband's retirement from the military after seventeen years of service.  Husband is currently employed, and Wife is not employed, claiming to be disabled.  Husband filed a complaint for divorce in 2013.  After a bench trial, the court entered an order granting the divorce, declaring a division of marital property, awarding alimony to Wife, and denying Wife's request for an award of attorney fees.  As part of the alimony award, the trial court granted Wife one-half of Husband's military retirement pay until Wife dies or remarries.  This Court granted Wife's application for discretionary appeal in order to examine whether the trial court erred in awarding a portion of Husband's military retirement pay as alimony, subject to termination upon Wife's death or remarriage, as opposed to treating it as a

marital asset subject to equitable division. Wife raises this, along with other issues, in her appeal.

1. The evidence shows Husband's military retirement benefits were acquired during the marriage. Accordingly, Husband agrees that the trial court erred by characterizing Wife's award of a portion of those benefits as alimony. As this Court has stated:

> Equitable property division is distinctly different from alimony. Alimony is an allowance out of one party's estate, made for the support of the other party when living separately. It is either temporary or permanent. OCGA § 19-6-1 (a). Equitable division of property, on the other hand, is an allocation of assets acquired during the marriage to the parties, based on their respective equitable interests in those assets. Only marital property is subject to equitable division. Marital property is that which is acquired as a direct result of the labor and investments of the parties during the marriage. Thus, retirement benefits, insofar as they are acquired during the marriage, are marital property subject to equitable division.

(Citations and punctuation omitted.) *Hipps v. Hipps*, 278 Ga. 49 (1) (597 SE2d 359) (2004). Because one spouse's retirement pay, acquired from the spouse's employment during the marriage, is marital property subject to equitable division, an award of a portion of such periodic payments does not terminate upon the remarriage of the party to whom it is awarded. See *Andrews v.*

*Whitaker*, 265 Ga. 76, 77 (4) (453 SE2d 735) (1995).   As such, that portion of the order declaring that payment of Husband's military retirement benefits "shall continue until [Wife] dies or remarries" is contrary to law and is reversed.  Upon remand, the trial court is instructed to award to Wife her equitable portion of Husband's military retirement benefits as part of the equitable division of marital property that will survive Wife's death or remarriage.  See *Plachy v. Plachy*, 282 Ga. 614, 615 (652 SE2d 555) (2007).

2.  At trial, Wife sought to admit into evidence an audio recording Wife made of a meeting between the parties and their church pastor held after the complaint was filed and while the parties were attempting to reach a settlement of their claims.  She sought to admit the recording as evidence Husband agreed at that meeting to a settlement of financial issues raised in the action.  The recording was made without the knowledge or consent of the other parties to the conversation, and Husband objected to its admission on the ground that the conversation with the pastor was privileged pursuant to OCGA § 24-5-502.[1]  The trial court excluded evidence of the recorded conversation and rejected the

_____

[1] OCGA § 24-5-502 creates a privilege for any "communication made by any person . . . seeking counseling to any Protestant minister of the Gospel . . . or similar functionary . . . ."

3

two arguments Wife made in response to Husband's motion to exclude the recordings: first, that Wife's presence as a third party at the meeting removed the conversation from the protection of the clergy-penitent privilege; and second, that if the privilege applied, it would exclude only the minister's testimony, and he was not being called as a witness. On appeal, however, Wife asserts only that Husband failed to carry the burden of demonstrating the privilege applied to the conversation in question in the first place.

Relying upon *Parnell v. State*,[2] Wife argues the trial court erred in excluding the recording of the meeting since Husband did not testify, and no other evidence was presented, that Husband was seeking counseling, professing religious faith, or seeking spiritual comfort at this meeting. In *Parnell*, however, a communication that a criminal defendant sought to exclude was found not to be privileged because the person to whom the defendant made certain statements testified that, although he was a minister, at the time the statements were made to him he was not acting as a minister to the defendant. In *Morris v. State*, 275 Ga. 601, 603 (2) (571 SE2d 358) (2002), also relied upon by Wife, this Court held that since "only those communications with a clergy person in which the

[2] 260 Ga. App. 213 (581 SE2d 263) (2003).

declarant is professing religious faith, or seeking spiritual comfort or counseling are deemed privileged," then where the evidence fails to demonstrate the communications at issue fit within these parameters the privilege is not established. Again, *Morris* involved a case in which a criminal defendant made statements to a person who was a minister but who, "considering the totality of the circumstances involved in [the] matter," was not acting in the role of a clergy person at the time the statements were made to him. Id. at 603 (2). Thus, defendant's claim of privilege was rejected and the statements were admitted into evidence. Here, Wife asserts the trial court erred in finding the communications at issue fell within the context of marriage counseling with the parties' minister, and therefore within the statutory privilege, because no evidence was presented concerning the circumstances surrounding the communications with the pastor in this case.

The transcript of proceedings shows that immediately before the trial commenced the trial court conducted a hearing on whether the recording would be admitted into evidence. At the hearing, the trial court characterized the meeting between the parties and their pastor as one involving marriage counseling. Reference was also made to an earlier pre-trial proceeding at which

5

Husband's motion in limine was discussed but not ruled upon, but that hearing was not transcribed. Thus, the record does not reflect what, if any, evidence was presented or admissions were made at that hearing regarding the parties' meeting with their pastor. In any event, Wife's counsel raised no objection to the court's characterization and, instead, argued that the privilege for such counseling would apply to exclude only the minister's testimony, and he was not being called as a witness. The trial court rejected this argument and granted Husband's motion to exclude the recording from evidence. Although the party asserting an evidentiary privilege has the burden of establishing it, likewise, the party asserting error has the burden of establishing error from the record, and here, Wife failed to do so. Given the totality of the admitted circumstances surrounding the meeting, we conclude the trial court did not err in finding the meeting was a marriage counseling session with the parties' minister, and therefore did not err in excluding the recording of the meeting pursuant to the privilege set forth in OCGA § 24-5-502.

3. Wife asserts the trial court erred in excluding evidence that was remote in time concerning Husband's adulterous conduct on the ground that the conduct, which was ongoing since the early days of the marriage, had been

6

condoned by the Wife. At trial, Husband acknowledged he was currently living with another woman, and we agree with Wife that more recent adulterous acts on which a spouse relies to support a claim for equitable division of property may revive a claim for conduct that was condoned in the past. See *Wood v. Wood*, 283 Ga. 8, 11 (5) (655 SE2d 611) (2008); see also *Poulos v. Poulos*, 226 Ga. 375, 376 (1) (174 SE2d 925) (1970) (applying this rule to grounds for divorce). The record reflects, however, that the trial court excluded only a transcript of chat room conversations between Husband and other women that dated back to the 1990s. Those transcripts did not confirm any adulterous conduct. Further, during the pre-trial hearing on evidentiary matters, Wife's counsel indicated his consent to the trial court's decision to exclude this evidence. Despite the trial court's ruling that this evidence would be excluded, significant testimony regarding Husband's adulterous conduct going back to the early days of the marriage was admitted into evidence. In fact, as Wife acknowledges, the fact that Husband had numerous affairs is noted in the final decree and the trial court found Husband's adultery to be the cause of the divorce.

Nevertheless, Wife argues that the trial court's failure to give adequate

consideration to Husband's past conduct is reflected in the reduced amount of alimony awarded to Wife as compared to the award for temporary support, and in the denial of her request for attorney fees. The decision to award alimony, and in what amount, is to be based upon such factors as the financial resources of each party, along with "[s]uch other relevant factors as the court deems equitable and proper." See OCGA § 19-6-5 (a) (8).[3] Here, the final decree recites that the award of alimony was made after review of the parties' financial affidavits, along with other factors that are consistent with those found in the statute, such as Husband's conduct. This argument lacks merit.

4. We reject Wife's assertion that the trial court erred by excluding from evidence certain written documents exchanged between the parties that, according to Wife, show the parties reached an agreement regarding her support. At no time prior to trial, however, did Wife claim a financial settlement had

---

[3] Citing *McCurry v. McCurry*, 223 Ga. 334, 335 (1) (155 SE2d 378) (1967), Husband argues that a spouse's conduct may be considered in deciding whether the spouse is entitled to an award of alimony, but not in determining the amount of alimony. This Court held, however, in *Bryan v. Bryan*, 242 Ga. 826, 827 (1) (251 SE2d 566) (1979), superceded by statute and in other respects as noted in *Reno v. Reno*, 249 Ga. 855, 855 (295 SE2d 94) (1982), that the rule established in *McCurry* and similar cases had been abrogated by changes to the alimony statute in 1977, now codified at OCGA § 19-6-1. While we are not certain that *Bryan* correctly construed the 1977 statute, *McCurry's* rule was clearly abrogated by the 1981 statutory amendment adding what is now OCGA § 19-6-5 (a) (8).

been reached or seek to enforce a settlement agreement. At most, these documents are evidence of the parties' offers and counteroffers made in attempts to negotiate the issues raised in the divorce proceeding. As such, this evidence was not admissible at trial. See OCGA § 24-4-408 (b).

5. Finally, Wife asserts the financial disparity between the parties as reflected in their financial affidavits demonstrates that the award of alimony is unjustifiably low, and that the denial of Wife's request for attorney fees reflects the trial court's inexcusable animus toward her. With respect to the amount of the alimony award, the record shows the trial court considered Husband's ability to pay and Wife's needs, and since some evidence supported the trial court's decision, we find it did not err in its determination of the amount of alimony awarded. See *Bloomfield v. Bloomfield*, 282 Ga. 108, 112 (3) (b) (646 SE2d 207) (2007). With respect to the denial of attorney fees, an award of attorney fees in a divorce action is "[w]ithin the sound discretion of the court, except that the court shall consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party." OCGA § 19-6-2 (a) (1). Again, the record reflects the trial court considered the relative financial positions of the parties. Given the facts of

9

record, we find no abuse of discretion in the court's denial of Wife's request for attorney fees.  See *Sponsler v. Sponsler*, 287 Ga. 725, 727-728 (2) (699 SE2d 22) (2010).

Judgment affirmed in part and reversed in part, and case remanded with direction.  All the Justices concur.