**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 28, 2021**

# In the Court of Appeals of Georgia

A21A1015. HUTCHESON v. THE STATE.

MILLER, Presiding Judge.

In the second appearance of this case before this Court, Jack Lance Hutcheson seeks review after a jury found him guilty of various sexual offenses. On appeal, he argues that (1) the trial court erred in admitting images found on his computer under OCGA § 24-4-414 because the images were too dissimilar to the charged conduct; (2) the search warrant for his computer was defective because the magistrate judge did not have a substantial basis to conclude that probable cause existed; and (3) his trial counsel was ineffective for failing to object to various hearsay statements and for withdrawing a motion to suppress statements Hutcheson made to his pastor. Upon a close review of the record, we reject all of Hutcheson's enumerations of error and affirm his convictions and sentence.

The relevant facts are set out in our prior opinion in this case:

Viewed in the light most favorable to the jury's verdict, the evidence shows that C. R. first met Hutcheson when he was 12 years old at Russellville Baptist Church, where Hutcheson was the bass player at the time. C. R. described Hutcheson as a friend and a father figure; and at some point, C. R. and Hutcheson began spending time together outside of church-sponsored activities, primarily playing video games. Eventually, C. R. began attending Sanctuary Church, where Hutcheson had been hired as the youth pastor. By this time, Hutcheson had moved into his own home, and C. R. would often "hang out" there. C. R. — who had a "rough" home life — would also regularly stay the night with Hutcheson, who occasionally provided him with alcohol.

Around the time C. R. turned 14 years old, Hutcheson and C. R. began engaging in certain sexual activities. On one occasion, they got drunk and watched each other masturbate, and other times, Hutcheson attempted to "jerk [C. R.] off" with his hands. Hutcheson also put C. R.'s hands on his genitalia and then ejaculated. At times, C. R. and Hutcheson showered together, and Hutcheson touched C. R. once or twice when they did so. Eventually, Hutcheson mentioned the possibility of engaging in oral sex, but C. R. refused. These sexual interactions happened "at least every other time" C. R. went to Hutcheson's house. C. R. did not tell anyone about it at the time because he had "no justification" for saying it was wrong, and "[t]he only person [he] really saw as a [parental] figure was the person doing it so why question it."

2

Throughout high school, C. R. did not tell anyone about the sexual abuse because he was embarrassed, but he continued going to Hutcheson's house just to get away from home. When C. R. was 17 years old, he went to live with his father in Pennsylvania, where he graduated from high school. C. R. had a fight with his father though, and he returned to Georgia. But C. R.'s mother would not allow him to live with her, and he had nowhere else to go except for Hutcheson's house. After C. R. moved in with Hutcheson, Hutcheson again mentioned engaging in sexual acts, but when C. R. continued to refuse, he eventually stopped asking.

During this time, C. B., a middle school student, began spending time with Hutcheson and was at his house "a lot" playing video games and hanging out. Sometimes, C. B. spent the night at Hutcheson's house like C. R. did when he was a teenager; and on those occasions, C. B. usually slept in Hutcheson's room. After observing this behavior, C. R. told his pastor and other church members about the sexual abuse he suffered years earlier when staying at Hutcheson's house. Then, sometime around August or September 2015, C. R. repeated his allegations to law enforcement. C. R. also told an investigator that he had seen a picture on Hutcheson's computer that appeared to be of a naked underage boy.

According to C. B., he met Hutcheson — who was the youth leader at his church — when he was in middle school, and they developed a close, father-son like relationship. C. B. began spending a lot of time alone with Hutcheson, playing video games and watching movies. Then, when C. B. was around 11 or 12 years old, while they were watching a

3

movie, Hutcheson pulled down both of their pants and made C. B. "jerk him off." Hutcheson also made C. B. sleep in his room and take showers with him. And during their showers, Hutcheson would touch C. B. on his "privates," and make C. B. touch his "privates." These sexual interactions between Hutcheson and C. B. happened "[m]ore times than [C. B.] could count," and C. B. believed that if he stopped going to Hutcheson's house, people would find out about what was happening. Hutcheson told C. B. not to tell anyone about their sexual interactions, and C. B. initially complied. But eventually, C. B. told his pastor about the sexual abuse because he felt like someone needed to know, and after that, he was subjected to a forensic interview. Eventually, in August 2015, Hutcheson met with his pastor and others from his church, admitted that C. R.'s allegations were true, said he had a "problem with boys," and apologized for his conduct.

(Footnote omitted.) *Hutcheson v. State*, Case No. A20A1740 (Dec. 08, 2020).

A grand jury indicted Hutcheson on four counts of child molestation (OCGA § 16-6-4) and two counts of enticing a child for indecent purposes (OCGA § 16-6-5). At trial, the jury found him guilty on all counts. The trial court sentenced Hutcheson to a total of 60 years, consisting of 25 years of imprisonment and the remainder on probation. Hutcheson filed a motion for new trial, which the trial court denied after a hearing. In the initial appeal, we vacated the denial of Hutcheson's motion for new trial because the trial court failed to conduct the requisite "thirteenth juror" analysis

4

and remanded for further proceedings. *Hutcheson v. State*, Case No. A20A1740 (Dec. 08, 2020). On remand, the trial court entered another order denying Hutcheson's motion for new trial. This appeal followed.

1. Hutcheson first argues that the trial court erred in allowing into evidence 13 images of child pornography that were recovered from his computer pursuant to OCGA § 24-4-414. He specifically contends that the images were too dissimilar to the charged offenses to be relevant and that the unfair prejudicial effect of the images substantially outweighed any probative value. We discern no abuse of discretion.

"Ultimately, a trial court's decision on whether to admit evidence under [OCGA § 24-4-414] will be overturned only where there is a clear abuse of discretion." *State v. McPherson*, 341 Ga. App. 871, 874-875 (800 SE2d 389) (2017).

"In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." OCGA § 24-4-414 (a).

> Given the express direction that evidence of prior sexual offenses committed by the defendant "shall be admissible," OCGA § 24-4-414 (a) and two related statutes, OCGA §§ 24-4-413 (a) and 24-4-415 (a), have been construed as creating a rule of inclusion, with a strong

5

presumption in favor of admissibility. Further, evidence admitted under these statutes is not subject to the limitations of OCGA § 24-4-404 (b), but, instead, may be considered for its bearing on any matter to which it is relevant, including whether the evidence demonstrates that the defendant had a propensity to commit certain sexual offenses. As this Court has held, under OCGA § 24-4-414 (a), showing a disposition toward molestation is a relevant purpose and not unfairly prejudicial in light of the nature of that conduct. Thus, evidence that a defendant engaged in child molestation in the past is admissible to prove that the defendant has a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case.

Even so, evidence that is admissible under these statutes may be excluded if the trial court concludes that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The determination as to whether to exclude evidence for any of these reasons calls for a common sense assessment of all the circumstances surrounding the previous offense, including prosecutorial need, overall similarity between the previous act and the charged offense, as well as temporal remoteness. Indeed, exclusion of otherwise probative and relevant evidence under OCGA § 24-4-403 is an extraordinary remedy which should be used only sparingly.

(Citations, punctuation, and footnotes omitted.) *McPherson*, supra, 341 Ga. App. at 873-874.

6

Here, the 13 images at issue were of prepubescent or early pubescent boys, and each image depicted a boy as either completely naked or partially naked with his genitalia showing. These images demonstrate that Hutcheson had a sexual interest in boys around the age of the victims in this case, and they were therefore relevant to establish that Hutcheson had a prurient interest in children of that age. See *Holzheuser v. State*, 351 Ga. App. 286, 290 (1) (a) (ii) (828 SE2d 664) (2019) (images of child pornography were relevant and admissible to establish that the defendant had "a prurient interest" in underage girls, which would support a finding that the defendant intended to expose himself to children for the purpose of sexual gratification, an element of child molestation); *Eubanks v. State*, 332 Ga. App. 568, 571 (2) (774 SE2d 146) (2015) (evidence that a defendant engaged in child molestation in the past was relevant to show, among other things, that the defendant had "a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case.") (citation omitted). Additionally, the images were not entirely unrelated to the charged conduct because C. R.'s discovery of pornographic images on Hutcheson's computer was part of the initial complaint made to law enforcement. The images were also found on Hutcheson's computer around the time that he committed the crimes in question, and so there was no

7

temporal remoteness between the charged acts and the alleged other acts evidence. The images were thus relevant to the issues at trial so as to be admissible under OCGA § 24-4-414 (a).

As for Hutcheson's argument that the images were more prejudicial than probative,

> the prejudicial impact of evidence of similar transactions in child molestation cases is generally considered to be outweighed by its probative value in demonstrating an accused's disposition toward committing a molestation. In fact, when the defendant's intent in committing certain acts is a strongly contested issue at trial, as is the case here, evidence that he committed prior similar acts tends to demonstrate his intent and, thus, has more probative value, which further justifies its admission.

(Citations and footnotes omitted.) *McPherson*, supra, 341 Ga. App. at 876 (1). We finally note that Hutcheson has not argued that admitting the images into evidence confused the issues or misled the jury. Considering all these circumstances, we conclude that the trial court did not abuse its discretion in admitting the images into evidence.

2. Hutcheson next argues that the trial court erroneously denied his motion to suppress evidence found on his computer because the affidavit supporting the search

warrant did not establish probable cause to believe that evidence would be found on the computer. He argues that the affidavit (1) failed to include any identifying information about the victim, who was the source of the information in the affidavit; (2) failed to allege that the victim was under 16 years old; and (3) failed to contain any information that would create a nexus between any alleged child molestation and his computer. We disagree.

> In determining whether probable cause exists [to support a search warrant], the issuing judge is required simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that evidence of a crime will be found in a particular place. An officer's inference that items sought will be at the place to be searched requires no more than a fair presumption to be reasonable.

(Citations and punctuation omitted.) *Briscoe v. State*, 344 Ga. App. 610, 612-613 (2) (b) (811 SE2d 426) (2018). "Substantial deference is afforded to a magistrate's decision to issue a search warrant based on a finding of probable cause." (Citation omitted.) *Daniels v. State*, 278 Ga. App. 332, 334 (1) (629 SE2d 36) (2006).

The affidavit supporting the search warrant for Hutcheson's computer alleged that Hutcheson had engaged in sexually explicit conduct with "minor victim #1" on

9

many occasions between 2010-2013. The affidavit alleged that "minor victim #1" was using Hutcheson's computer when he found photographs in the recycle bin that were "weird," and the victim stated that "there was at least one picture of a naked male who appeared to be underage." The law enforcement affiant averred that, through her own training and experience, she learned that "a computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography." From this affidavit, the magistrate judge determined that there was probable cause to believe that Hutcheson violated OCGA § 16-6-4 (child molestation) and OCGA § 16-12-100 (sexual exploitation of a minor) and issued a search warrant authorizing a search of Hutcheson's electronic equipment and computers.

We conclude that this affidavit was sufficient to establish probable cause to search Hutcheson's computer. First, although the affidavit does not contain any identifying information about "minor victim #1" that would establish his reliability or corroborate his testimony,

> our precedent establishes an important distinction between circumstances in which the information comes from the alleged victim, as opposed to a confidential hearsay informant. When the source of the information provided in the affidavit is based upon the personal observation of the alleged victim of the crime, corroboration to establish the reliability of the victim's report is not necessary.

10

*Flewelling v. State*, 300 Ga. App. 505, 511 (2) (b) (685 SE2d 758) (2009) (search warrant affidavit properly established probable cause even when the affidavit only identified the source of the information as a "15-year-old female" victim).

Second, although the affidavit did not specify that the victim was under 16 years old, which is the age of the victim required to constitute child molestation under OCGA § 16-6-4 (a), the affidavit consistently referred to the victim as a "minor" (i.e. a person under 18 years of age), and it also referred to the victim as a minor when describing events in 2015, when it alleged that the criminal sexual activity occurred between 2010-2013. The affidavit therefore set out enough facts from which the issuing judge could infer that the alleged sexual activity occurred when the victim was under 16 years old.

Finally, according to the affidavit, the victim specifically stated that he saw "at least one picture" on Hutcheson's computer "of a naked male who appeared to be underage," and the affiant testified that, in her experience, computers typically play a key role in child molestation and child pornography cases. The affidavit therefore clearly set out a nexus between Hutcheson's computer and the suspected criminal activity. See *Daniels*, supra, 278 Ga. App. at 335 (1) (b) (affidavit established sufficient nexus between defendant's computer and alleged sexual activity when the

11

victim reported that there was a computer in the room during the alleged molestation and the affiant averred that "persons involved in acts of child molestation often use their computers to perpetrate their illegal acts and to maintain files and data related to their illegal act").

The affidavit was sufficient to establish probable cause to search Hutcheson's computer, and so the trial court properly denied Hutcheson's motion to exclude the evidence found therein.

3. Hutcheson further argues that his trial counsel provided ineffective assistance in failing to object to hearsay testimony concerning C. R.'s statements to others about the abuse and in withdrawing a motion to suppress statements Hutcheson made to his pastor, Michael Quicke. After a careful review of the record and the relevant law, we conclude that Hutcheson's trial counsel did not provide ineffective assistance.

> To prevail on a Sixth Amendment claim of ineffective assistance, [Hutcheson] must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. To prove deficient performance, [Hutcheson] must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. And to prove prejudice, [Hutcheson] must show that there is a reasonable

12

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This burden is a heavy one.

(Citations and punctuation omitted.) *Koonce v. State*, 305 Ga. 671, 672 (2) (827 SE2d 633) (2019).

(a) Hutcheson first argues that his trial counsel was ineffective for failing to object to hearsay testimony from five witnesses detailing what C. R. told them about Hutcheson's abuse. At the motion for new trial hearing, Hutcheson's trial counsel testified that he believed that C. R. was the "worst witness for the State" because there were multiple significant flaws with C. R.'s alleged time line and account of the events. Hutcheson's trial counsel purposefully allowed C. R.'s statements to these five witnesses to come into evidence so that he could highlight the differing accounts that C. R. gave to each person and emphasize that C. R. lacked credibility.

Trial counsel's failure to object to these hearsay statements was therefore part of a conscious, over-arching trial strategy. "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. Matters of trial tactics . . . are grounds to find counsel ineffective only if the tactical decision is so patently unreasonable that no competent attorney would

13

have chosen it." (Citation omitted.) *Campbell v. State*, 337 Ga. App. 7, 12 (2) (785 SE2d 649) (2016). "A decision to refrain from objecting to testimony in favor of impeaching a witness or showing inconsistencies in the evidence is a trial strategy and, if reasonable, will not support an ineffectiveness claim." *Koonce*, supra, 305 Ga. at 673 (2) (b). On this record, we cannot conclude that trial counsel's strategy was unreasonable, and so we reject this claim of error.

(b) Hutcheson also argues that his counsel was ineffective for withdrawing a motion to suppress statements he made on two separate occasions to Michael Quicke, the senior pastor at Sanctuary Baptist Church, because he argues that such statements were privileged. We reject this argument because the statements made at the first meeting were not privileged and because Hutcheson was not prejudiced by the admission into evidence of the statements at the second meeting.

"Every communication made by any person professing religious faith, seeking spiritual comfort, or seeking counseling to any Protestant minister of the Gospel . . . by whatever name called, shall be deemed privileged." OCGA § 24-5-502. The privilege does not apply, however, if the totality of the circumstances demonstrates that the statements were made to a person who is a minister but was not acting in the role of a clergy person at the time the statements were made to him. *Parnell v. State*,

14

260 Ga. App. 213, 214-215 (1) (581 SE2d 263) (2003) (applying former OCGA § 24-9-22); see also *Frost v. Frost*, 299 Ga. 278, 279-281 (2) (787 SE2d 693) (2016) (discussing *Parnell* and other case law).

At trial, Quicke testified that he was the senior pastor at the Sanctuary Baptist Church while Hutcheson was a youth group leader there. After Quicke heard the allegations from the victims, he arranged to meet with Hutcheson at a restaurant. Quicke confronted Hutcheson about the allegations and asked him if there was "anything going on," and Hutcheson replied "Yes." Quicke told Hutcheson that he needed to resign and that he "need[ed] some help." After this confrontation, Quicke arranged a meeting in his church office between himself, Hutcheson, and John Branan, who was the stepfather of Hutcheson's girlfriend and a key leader of the church. During the meeting, Hutcheson "didn't say much. He just apologized" to Branan and Quicke. Hutcheson did, however, "[admit to] having a problem with young boys." After the meeting, Hutcheson immediately resigned from the church.

Regarding the initial meeting between Hutcheson and Quicke at the restaurant, the record supports the trial court's determination that Quicke was not acting within his role as clergy but was instead acting in his capacity as either an employer or supervisor of Hutcheson at the time Hutcheson made the incriminating statements.

15

The evidence shows that Quicke's purpose in arranging the meeting was not spiritual in nature. Quicke testified that he specifically arranged to meet with Hutcheson after C. R. had told Quicke what happened, and Quicke testified that he arranged the meeting with Hutcheson to discuss the allegations. When Hutcheson admitted that there was some truth to them, Quicke's reaction was not to provide spiritual comfort, but he instead immediately told Hutcheson that he "needed to resign" from his position with the church. Additionally, while Hutcheson did eventually seek spiritual guidance and comfort from Quicke about the situation, such guidance was sought and obtained after the above admission. See *Parnell*, supra, 260 Ga. App. at 214-215 (1) (clergy privilege did not apply when the pastor "testified that he did not start ministering to [the defendant] until after . . . the complained-of statements were made").

At the time Hutcheson made the key statements during this meeting, therefore, Quicke was not ministering to Hutcheson or otherwise engaged in pastoral duties so as to fall within the privilege. See *Parnell*, supra, 260 Ga. App. at 214 (1) (clergy privilege did not apply to statements the defendant made to a minister when the defendant "did not seek comfort or solace of a spiritual nature, but was rather seeking the help of a parent and source of secular strength to accompany him to the police

16

station") (punctuation omitted); *Morris v. State*, 275 Ga. 601 (571 SE2d 358) (2002) (statements by defendant to minister were not privileged when the circumstances showed that the defendant was "seeking the help of a respected friend and source of secular strength" when they were made). Given that the motion to suppress any statements made at this meeting would have ultimately been unsuccessful, Hutcheson cannot show that his counsel was ineffective in this respect. *King v. State*, 287 Ga. App. 375, 377 (2) (a) (651 SE2d 496) (2007) ("It is not ineffective assistance of counsel to refrain from making a futile motion or filing a meritless motion to suppress.") (punctuation omitted).

As for the second meeting between Hutcheson, Quicke, and Branan, putting aside the question of whether trial counsel was deficient in withdrawing the motion to suppress, we conclude that Hutcheson has not shown that he was prejudiced by the admission of any statements at this meeting. We note that, according to the testimony at trial, Hutcheson "apologized" to Branan and Quicke during this meeting and "admitted having a problem with young boys." Nevertheless, in light of Hutcheson's admission to Quicke in the first meeting and the substantial other evidence presented in this case, such as the images of child pornography found on his computer and the tesimony of the victims, we cannot conclude that there is a reasonable probability that

these statements affected the result of the trial. See *Westbrook v. State*, 308 Ga. 92, 98 (3) (b) (839 SE2d 620) (2020) (defendant was not prejudiced by the admission of hearsay text messages because the evidence was cumulative of other properly admitted evidence at trial); see also *Jackson v. State*, 288 Ga. App. 432, 435 (1) (d) (654 SE2d 232) (2007) (holding that, even assuming that evidence was presented in violation of the attorney-client privilege, defendant failed to show that such admission prejudiced him so as to constitute ineffective assistance). Hutcheson has therefore failed to demonstrate that his counsel provided ineffective assistance.

4. Hutcheson finally argues that the cumulative effect of the trial court's errors warrants a new trial. "Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel — at least where those errors by the court and counsel involve evidentiary issues." *State v. Lane*, 308 Ga. 10, 14 (1) (838 SE2d 808) (2020). The only potential error that we have found or pretermitted was trial counsel's alleged deficiency in withdrawing the motion to suppress statements made at the meeting between Hutcheson, Quicke, and Branan. "Because we have found only one potential error at trial on the grounds asserted by [Hutcheson], which

error we determined to be harmless, [Hutcheson's] claim of cumulative error fails."

*Thrift v. State*, 310 Ga. 499, ___ (10) (852 SE2d 560) (2020).

For all these reasons, we reject Hutcheson's enumerations of error and affirm his convictions and sentence.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*