**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 23, 2024**

# In the Court of Appeals of Georgia

A24A1164. TAPPLIN v. TAPPLIN.

DOYLE, Presiding Judge.

Following the trial court's entry of a final order and decree of divorce of Patrick and Cheryl Tapplin, Patrick filed a discretionary application challenging the trial court's division of property. This Court granted the application, and Patrick appeals, arguing that the trial court erred by (1) granting Cheryl 30 percent of a home Patrick contends is separate property; and (2) granting Cheryl the full value of her 403 (b) retirement account. For the reasons that follow, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

As evidenced in the record, Patrick and Cheryl were first married in the 1980s, divorced in the 1990s, and had two children who are now adults. Approximately two

years after the parties divorced in the late 1990s, they reconciled and began living together, moving around to several states for Patrick's profession before settling in Georgia, during which time both parties were employed and financially provided for family expenses. The couple officially married a second time in June 2021 and separated again in September 2022.[1]

In 2010, while the parties were unmarried and living together, Patrick purchased a home at 22 Sweet Apple Lane; the mortgage for $134,714 and deed were in his name only, which Cheryl testified was done to avoid the bad credit she experienced after the couple had a vehicle in her name repossessed.[2] At least from that point forward, Cheryl paid for family groceries; most or all child-related expenses, including food, clothing, extracurricular activities, and school-related expenses; health insurance for herself and the children; garbage collection; Patrick's health insurance

---

[1] The parties do not contend that the 1998 reconciliation constituted remarriage. Compare *Chen v. Chen*, 362 Ga. App. 99, 101 (2) (866 SE2d 635) (2021) (applying OCGA § 19-3-1 to uphold the trial court's finding that the parties were married in a 2007 ceremony even though they did not obtain a marriage license until 2016, and husband was married to another woman for a few years between 2007 and 2016 in order for that woman to obtain a green card).

[2] Cheryl testified that very little down payment was made because Patrick obtained a mortgge through a specific federal loan program.

when allowed by her employer; family gifts, including for Patrick's family of origin; and some or all of the parties' credit card expenses. She testified that Patrick paid the mortgage, electric, water, car insurance, and cable bill. Cheryl testified that she also contributed some money for repairs of 22 Spring Apple Lane, paid Patrick $3,900 for a fence, and paid $515 for a survey necessary for installation of the fence.

Beginning no later than 2013, Cheryl deposited $500 every month into a Peach State bank account in Patrick's name. Those deposits increased to $700 a month by 2016, $800 in 2017, $900 in 2018, and $1,000 a month by 2019, and continued in that amount until the parties separated in September 2022. Cheryl claimed that the deposits were for her share of family expenses paid by Patrick, including the mortgage.

Additionally, Cheryl contributed to her own 403 (b) retirement account during the parties' relationship, both before and during their second marriage; Patrick never contributed directly to the 403 (b) or deposited money into Cheryl's individual accounts. Patrick presented evidence that the 403 (b) account balance was $64,899.72

as of June 2021, and $86,880.20 as of October 2023.[3] Statements showed that Cheryl

contributed $320.45 per month and her employer contributed $137.33.

Patrick testified that he paid the mortgage from a bank account in his name,[4]

that Cheryl did not help pay for it, and he never discussed co-ownership of the house

with her. Text messages from Patrick to Cheryl sent after their second separation in

September 2022, indicated that he had bought the house for her to make their home

together. Patrick's financial affidavit stated that 22 Spring Apple Lane was valued at

$292,678,[5] that he owed $75,099 on the note, and that the mortgage payment was

$1,170 a month.

The current case began when Cheryl filed a complaint in January 2023, seeking

a divorce and equitable division of property, including 22 Spring Apple Lane. In

addition to requesting equity from the residence for the period of time during the

---

[3] The statements reflect an outstanding loan from the 403 (b) account, with a remaining balance of $14,042.89 and a monthly payment toward the loan of $400.12. This loan payment was an additional deduction taken from Cheryl's paycheck separate from her retirement contribution.

[4] This account was different from the one to which Cheryl made her deposits.

[5] A copy of a county website admitted as evidence showed an assessed value of the property of $211,630 as of 2020.

parties' second marriage, Cheryl asked the trial court to award her part of the equity in the residence from the parties' time cohabiting prior to their second marriage on a theory of unjust enrichment as stated in *Cates v. Brown*.[6] Patrick answered, counterclaimed for a divorce, and sought equitable division of marital property, but he requested the court grant him exclusive ownership of 22 Spring Apple Lane on the basis that it was his nonmarital property. Neither party requested alimony.

After a hearing, the trial court entered a final order and decree of divorce granting the parties a divorce. The court concluded that it could not determine what part of the equity in the residence constituted marital property under the source of funds rule because the parties submitted no evidence on that issue. Nevertheless, the court awarded Cheryl 30 percent of the equity in 22 Spring Apple Lane under a theory of unjust enrichment. The court also awarded Cheryl the full value of her 403 (b) account on the ground that no evidence was provided regarding how much of the account's increased value during the parties' second marriage resulted from market forces rather than marital contributions. Patrick appeals these determinations.

---

[6] 357 Ga. App. 326 (850 SE2d 764) (2020).

The equitable division of property is an allocation to the parties of the assets acquired during the marriage, based on the parties' respective interests. The purpose behind the doctrine of equitable division of marital property is to assure that property accumulated during the marriage be fairly distributed between the parties. Only property acquired as a direct result of the labor and investments of the parties during the marriage is subject to equitable division.[7]

[S]eparate property brought to the marriage remains that spouse's separate property upon dissolution of the marriage . . . . [That said,] any appreciation in the value of the separate property during the marriage may or may not be separate property, depending on the circumstances giving rise to the appreciation. If the factfinder determines the appreciation is due solely as the result of market forces, the appreciation is the owner's separate property; to the extent the factfinder determines the appreciation is the result of the efforts of either or both spouses, that appreciation is a marital asset. [If] a spouse brings an encumbered home to the marriage and . . . the marital unit reduced the outstanding balance of the encumbrance, a portion of the interest in the home is marital property subject to equitable division.[8]

---

[7] (Citations and punctuation omitted.) *Crowder v. Crowder*, 281 Ga. 656, 657 (642 SE2d 97) (2007).

[8] (Citations and punctuation omitted.) Id. at 657-658.

"In a bench trial, the court sits as the finder of fact and, as such, is charged with the responsibility of determining whether and to what extent a particular item is a marital or non-marital asset and then exercising its discretion and dividing the marital property equitably."[9] Whether property is marital or non-marital, property value, and whether any appreciation in value resulted from market forces or the spouses' efforts are questions of fact for the trial court in this instance.[10] "When determining the division of marital property, the trier of fact should consider all of the relevant circumstances, including the conduct of the parties, both during the marriage and with reference to the cause of the divorce."[11]

1. We address Patrick's last enumeration of error first. He argues that the trial court erred when it awarded Cheryl the full value of her 403 (b) account after holding that it could not apply the source of funds rule to determine what portion of the value acquired during the marriage resulted from the parties' efforts or market forces.

---

[9] (Punctuation omitted.) *Taylor v. Taylor*, 283 Ga. 63, 64 (1) (656 SE2d 828) (2008), quoting *Crowder*, 281 Ga. at 658-659.

[10] See *Crowder*, 281 Ga. at 657-658.

[11] (Citations and punctuation omitted.) *Zekser v. Zekser*, 293 Ga. 366, 367 (1) (744 SE2d 698) (2013).

The law is well-settled that retirement benefits acquired during the marriage are marital property subject to equitable division. . . . An equitable division of marital property does not necessarily mean an equal division. The trial court has a broad discretion to make an equitable division of retirement accounts upon consideration of all the relevant evidence.[12]

Based on the records for the 403 (b) account, Patrick argues that approximately $21,000 constituted marital property subject to equitable division, and the trial court erred by awarding the full value of that property to Cheryl. The trial court held that "no calculation was provided to show how much of the increased value was attributed to market forces rather than marital contribution. Regardless, the [c]ourt finds it equitable to award [Cheryl] the entire value of the" 403 (b) account. Pretermitting whether Patrick waived his claim to the 403 (b) account,[13] and pretermitting whether the trial court erroneously found that it could not itself calculate the increase in value

---

[12] (Citations and punctuation omitted.) *Taylor*, 283 Ga. at 63-64 (1) (explaining that the trial court was not required to make a distribution to the wife of the husband's retirement).

[13] Regarding the 403 (b) account, Patrick's attorney stated at the hearing, "[w]e're not asking for that, Judge. We're not asking for her 403 (b). We're merely proving that it was a marital asset as we're required by law. Ms. Tapplin can keep her 403(b), but we should therefore also be able to keep the house that Mr. Tapplin has invested in."

due to market forces rather than marital contribution,[14] we cannot say that the trial court's award of the full value to Cheryl was an abuse of discretion.

The trial court found that regardless of whether the marital portion of the account accrued via party contribution or market forces, it was equitable to award the total amount of the 403 (b) to Cheryl. Although the trial court's order does not explain its rationale for this award,[15] based on the wide latitude afforded the trial court in making such an award, Patrick has failed to establish an abuse of discretion as to this issue.[16] Accordingly, we affirm the trial court's order in this respect.

---

[14] Patrick provided in his brief on appeal a total of employee and employer contributions for 2021 through 2023, which total about $20,600. See *Payson v. Payson*, 274 Ga. 231, 232 (1) (a) (552 SE2d 839) (2001) (explaining that employer stock that "was not generated by the marriage or accumulated during the marriage" was not marital property).

[15] We note that there is evidence in the record of both Cheryl and Patrick paying family living expenses from their own accounts over the years, but there is only evidence of money being transferred each month from Cheryl into Patrick's account to assist with the portion of living expenses paid by him. Although he claims that this was a joint account into which both parties deposited money, he was the sole owner of the account until adding her in 2021.

[16] See, e.g., *Zekser*, 293 Ga. at 367-368 (1).

2. Patrick next argues in several enumerations of error that the trial court erred by awarding Cheryl 30 percent of the equity in 22 Sweet Apple Lane under a theory of unjust enrichment.

"[T]he theory of unjust enrichment applies when as a matter of fact there is no legal contract, but where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for."[17] Moreover, "[t]he concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received."[18]

(a) First, Patrick argues that the trial court erred by ruling that both separate and marital property could be divided under a theory of unjust enrichment.

(i) We agree with Patrick to the extent that he argues the that the trial court erred by including in its calculation of the 30 percent award any increase in value due

---

[17] (Citations and punctuation omitted.) *Smith v. McClung*, 215 Ga. App. 786, 789 (3) (452 SE2d 229) (1994).

[18] (Citations and punctuation omitted.) *Jones v. White*, 311 Ga. App. 822, 827-828 (1) (b) (717 SE2d 322) (2011).

to Cheryl's contribution from the time between June 2021 and the second divorce — the time period of the parties' second marriage. During this time, the parties were in a marriage, which under Georgia law consists of "'(1) Parties able to contract; (2) An actual contract; and (3) Consummation according to law.'"[19] "[A] cause of action for unjust enrichment will lie only in the absence of an express contract."[20] Although the marriage is not a contract dealing directly with property ownership, after undertaking the second marriage, the two were subject to special rules of property division not applicable to unwed partners.[21] It was incumbent on Cheryl to provide proof of the approximate value of 22 Spring Apple Lane from June 2021, to the second divorce in order to have the trial court equitably divide the increase in value of the home and

---

[19] *Russell v. Sparmer*, 339 Ga. App. 207, 211 (1) (793 SE2d 501) (2016), quoting OCGA § 19-3-1; *In re Estate of Love*, 274 Ga. App. 316, 320-321 (3) (618 SE2d 97) (2005).

[20] *Campbell v. Ailion*, 338 Ga. App. 382, 387 (2) (790 SE2d 68) (2016), citing *Ga. Dept. of Community Health v. Data Inquiry*, 313 Ga. App. 683, 687 (2) (722 SE2d 403) (2012).

[21] See, e.g., OCGA § 53-2-1 (c) (1) (describing the rules of intestacy for a married decedent); OCGA § 19-6-1 et seq. (describing rules for awarding alimony at the time of divorce); *Frost v. Frost*, 299 Ga. 278, 278-279 (787 SE2d 693) (2016) (explaining the difference between equitable division of property and alimony).

property due to marital efforts.[22] The trial court found that this evidence was not in the record, and Cheryl has not cross-appealed this finding.[23] Thus, the trial court's award is vacated to the extent that it included in its calculation Cheryl's monetary transfers to Patrick during the parties' second marriage, and we remand to the trial court for recalculation of this award in a manner consistent with this opinion.

(ii) Nevertheless, this Court previously has affirmed a monetary award under a theory of unjust enrichment to a woman against her live-in ex-fiance for the increased value to the ex-fiance's real property during their relationship.[24] This Court has also affirmed a monetary award under the same theory to a woman in an unmarried, live-in relationship, for the value of her interest in the couple's assets,

---

[22] See, e.g., *Crowder*, 281 Ga. at 657-658. Compare *Snowden v. Alexander-Snowden*, 277 Ga. 153, 154-155 (587 SE2d 54) (2003) (explaining that despite the fact that "there was no evidence introduced as to the value of the home at the time of the marriage," sufficient evidence was in the record upon which the trial court could have calculated equitable distribution based on the source of funds rule).

[23] See, e.g., *State Automobile Mut. Ins. Co. v. Todd*, 309 Ga. App. 213, 215-216 (2) (709 SE2d 565) (2011) (explaining that a party waived his right to challenge the trial court's ruling on an issue he failed to cross-appeal if it was not raised in the main appeal).

[24] See *Phillips v. Blankenship*, 251 Ga. App. 235, 236-237 (2) (554 SE2d 231) (2001).

including the home in which they lived, which was owned by the man with whom she lived.[25] Therefore, we affirm the trial court to the extent that it determined that it could award Cheryl a portion of the equity from 22 Spring Apple Lane for the time period that she cohabited with and was transferring funds to Patrick for payment of family expenses, including the mortgage.

(b) Next, Patrick argues that the trial court erred because there was insufficient evidence to support Cheryl's claim for unjust enrichment and the damages as to her monetary contributions to him between the purchase of the home and June 2021. We disagree.

The evidence before the trial court showed that Patrick purchased 22 Spring Apple Lane in 2010, taking a note for approximately $135,000 and putting very little down payment. During that time, the couple lived together and Cheryl contributed to various expenses related to the house. Moreover, Cheryl made regular deposits into an account owned and controlled by Patrick totaling at least $76,000 during their pre-marital cohabitation while also paying many of the family expenses from her own accounts. There was evidence that the home was valued by the county at $211,630 in

---

[25] See *Cates*, 357 Ga. App. at 327-329 (2).

13

2020, that Patrick valued it at $292,678 in 2023, and that he owed less than $80,000 on it at that time. From these numbers, the trial court could extrapolate an approximate value added to the home equity by Cheryl's contributions during the time of their cohabitation,[26] and we will not disturb that finding based on this record.

(c) Finally, Patrick argues that the trial court erred by failing to apply the source of funds rule to equitably divide the value of the residence. Based on our holdings in Division 2 (a) and (b), we need not address this argument.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Hodges and Watkins, JJ., concur.*

---

[26] See id; *Phillips*, 251 Ga. App. at 236-237 (2). The trial court could have determined that Cheryl lived in Patrick's home for that time and enjoyed the benefits of the improvements the parties jointly made to the residence such that Patrick was not unjustly enriched by her contributions, but that is not what the trial court determined based on the testimony and evidence before it. Compare *Engram v. Engram*, 265 Ga. 804, 806-807 (2) (463 SE2d 12) (1995) (upholding grant of summary judgment on a claim of unjust enrichment based on testimony of construction costs, explaining that such testimony did not establish "that the addition enhanced the value of the property in any manner [or] thus conferred a benefit on the appellee[.]").